PEOPLE *v.* SIMS

PEOPLE *v.* PERRY

1. SEARCHES AND SEIZURES — AUTOMOBILES — GUEST PASSENGER — STANDING TO COMPLAIN.

   A guest passenger in an automobile expects and is entitled to certain privacy for his possessions as well as his person and the right protecting that expectation attaches upon his entry into the automobile; therefore he has standing to complain when a search is made of the automobile after he has been involuntarily, though legally, removed from it.

2. SEARCHES AND SEIZURES — AUTOMOBILES — WEAPONS — SEARCH WITHOUT WARRANT — WITHOUT CONSENT — GUEST PASSENGERS — STANDING TO COMPLAIN.

   Automobile passengers, who were arrested for carrying dangerous weapons in a motor vehicle, had standing to complain when police, without a warrant and without consent, searched that vehicle some 36 hours after their arrest.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 47 Am Jur, Searches and Seizures § 18.
Lawfulness of search of motor vehicle following arrest for traffic violation.  10 ALR3d 314.
[5] 56 Am Jur, Weapons and Firearms § 2.
[6] 56 Am Jur, Weapons and Firearms § 9 *et seq.*
[7, 8] 41 Am Jur 2d, Indictments and Informations § 173 *et seq.*

3. SEARCHES AND SEIZURES—WITHOUT WARRANT—AUTOMOBILES—
WEAPONS—VALIDITY—CONSTITUTIONAL LAW.

A search of an automobile without consent and without a
search warrant, some 36 hours after its impoundment, was
valid where the search was directly related to the carrying
of dangerous weapons in a motor vehicle for which defend-
ants, who had been passengers, were arrested, and occurred
before a June 23, 1969 decision of the United States Supreme
Court which held that a search incidental to an arrest is
valid without a warrant only to the extent that the search is
necessary to prevent the person arrested from seizing a weapon
or destroying evidence (US Const, Am 4).

4. SEARCHES AND SEIZURES—SEARCHES WITHOUT WARRANTS—STAND-
ARD OF REASONABLENESS—PROSPECTIVE APPLICATION.

The United States Supreme Court decision of June 23, 1969
making a warrant indispensable to a valid search under the
Fourth Amendment except where an exigency makes the war-
rant requirement itself unreasonable, applies only to searches
conducted after the decision date (US Const, Am 4).

5. WEAPONS—DANGEROUS WEAPONS—CRIMINAL LAW.

Whether a carbon dioxide pistol lacking the apparatus needed
for firing a pellet is a dangerous weapon within the meaning
of the statute prohibiting the carrying of dangerous weapons
in a motor vehicle is a question which requires no decision
where the presence of the pistol in the automobile in which
defendants were passengers rendered it admissible to show
that defendants were aware of other pistols in the automobile
which were conceded to be dangerous weapons and were
allegedly carried by defendants (MCLA § 750.227).

6. WEAPONS — DANGEROUS WEAPONS — AUTOMOBILES — PRESENCE —
SCIENTER — INSTRUCTIONS TO JURY.

A jury instruction that if defendants did not know that danger-
ous weapons were being carried in the automobile in which they
were passengers, their ignorance of that fact would be a good
defense to the charge of carrying dangerous weapons in a
motor vehicle, was proper and, when coupled with a general
instruction on the prosecution's burden of proving defendants'
knowledge of the presence of such weapons in that vehicle
and on the elements of the crime charged, adequately apprised
the jury of the findings required for a verdict of guilty.

7. INDICTMENT AND INFORMATION—AMENDMENTS—CONTINUANCE—
   RIGHT TO REQUEST.

> Amendment of substance, not of form, of an information entitles
> a defendant to a continuance upon request unless defendant
> is neither misled nor prejudiced by the amendment (MCLA
> § 767.76).

8. INDICTMENT AND INFORMATION—AMENDMENTS—CONTINUANCE—
   FAILURE TO REQUEST.

> Defendants were not entitled to complain on appeal that the
> trial court improperly allowed the prosecution to amend, on
> the day of trial, informations charging them with carrying
> not only a .38- and a .22-caliber pistol but also a .25-caliber
> pistol seized in an alleged illegal search of the automobile in
> which defendants were passengers when they were arrested,
> where defendants neither requested a continuance before trial
> nor showed how they were prejudiced by the amendments,
> and the record affirmatively showed that their trial counsel
> was aware of the three pistols during the preliminary exam-
> ination, that he reminded the prosecutor that the informa-
> tion did not mention all three pistols, and that he was willing
> to proceed to trial on the amended informations.

Appeal from Wayne, Edward S. Piggins, J. Sub-
mitted Division 1 March 2, 1970, at Detroit.
(Docket Nos. 5,934, 6,359.) Decided April 24, 1970.
Leave to appeal granted December 24, 1970. 384
Mich 780.

Thomas Sims and Leonard Perry were convicted
of carrying dangerous weapons in a motor vehicle.
Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Luvenia D. Dockett,* Assistant
Prosecuting Attorney, for the people.

*Arthur Tarnow* (Defenders' Office—Legal Aid
and Defender Association of Detroit), for defend-
ants on appeal.

Before: LESINSKI, C. J., and QUINN and V.J.
BRENNAN, JJ.

V. J. BRENNAN, J. On November 2, 1967, defendants Thomas Sims and Leonard Perry were jointly tried by a jury and convicted of carrying dangerous weapons in a motor vehicle,[1] namely a .38-caliber Colt revolver, a .25-caliber Browning automatic pistol, and a .22-caliber Crosman $CO_2$ pistol lacking the $CO_2$ apparatus. The defendants' four allegations of error are rephrased and discussed *seriatim*.

1. *The .25-caliber automatic pistol was seized pursuant to an illegal search.*

At the time of their arrest on June 15, 1967, the defendants were passengers in a 1966 Mustang owned by a girlfriend of the driver. Sims sat in the front seat, Perry in the back. The driver, one Donny Young, a friend of ten or so years, had picked them up about an hour beforehand and was allegedly taking them to see a prize fight in Detroit, when, according to the arresting officers, he turned at the corner of Dix and Schaefer in Melvindale without signalling. Two of the four arresting officers approached the trio after they had been pulled over, officer Mitchell Bryndza going to the driver's side, officer Arthur Majewski going to the passenger side. Asked for his driver's license and registration, Young fumbled through his wallet without success and then told Sims to check the glove compartment. Sims opened the glove compartment and thereby revealed inside a holster that was later found to be empty. Seeing the holster, officer Majewski shouted "Watch out." At the very same moment, Young pulled the .38 out from behind his right leg and fired a shot at officer Bryndza. The shot missed and Young was subsequently disarmed. The officers

---

[1] MCLA § 750.227 (Stat Ann 1962 Rev § 28.424).

then ordered Sims and Perry out of the automobile, arrested them along with Young, and in the process found the .22-caliber $CO_2$ pistol lying in open view on the seat where Perry had been sitting. The Mustang was impounded and subjected, some 36 hours later, to a warrantless and nonconsensual search that turned up the .25-caliber pistol secreted under the right front floor mat, together with a box of ammunition.

Prior to trial, defense counsel moved to suppress the .25-caliber pistol. An evidentiary hearing was held, and the motion was denied, substantially under the reasoning approved in *Cooper* v. *California* (1967), 386 US 58 (87 S Ct 788; 17 L Ed 2d 730). The pistol was then introduced in evidence.

In reaching the question of illegal search and seizure, we must initially decide whether the defendants have standing to complain. We conclude that they do.

In recent years, the courts of this country and state have steadily moved away from concepts of property law in determining the rights of persons under the Fourth Amendment. In the forefront of this trend is *Jones* v. *United States* (1960), 362 US 257 (80 S Ct 725; 4 L Ed 2d 697), where the Supreme Court said:

"We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. * * * Distinctions such as those between 'lessee,' 'licensee,'

'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards.

\* \* \*

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him."[2]

Consistent with this trend is the Michigan Supreme Court's holding in *People* v. *Gonzales* (1959), 356 Mich 247, where a claim of illegal search and seizure was presented by a passenger who had been ordered to move from his seat so as to facilitate a search of the automobile. The Court said:

"Further, we believe that on the facts in this case defendant had the right to raise the constitutional objection. There is no showing of any waiver of the objection by anyone. And though defendant apparently had only the status of a passenger, when the first requirement of the search (and a material one to its outcome) was that defendant remove himself from the seat in the automobile where he had a right to be, we regard the search as directly affecting him."

It is true of course that the Court in *Gonzales* was impressed by the passenger's being ordered to move for the search, while the search in the present case took place in the defendants' absence. Yet by holding the search of the automobile invalid under the Fourth Amendment, the Court in *Gonzales* implicitly

---

[2] Later decisions of the Court have been entirely consistent with *Jones.* See, *Warden* v. *Hayden* (1967), 387 US 294, 304 (87 S Ct 1642, 18 L Ed 2d 782); *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576).

recognized that a guest passenger expects and is entitled to certain privacy for his possessions as well as his person. If the right protecting that expectation attaches upon the passenger's entry into the automobile, as it must, it can hardly matter that the search is conducted in his absence after he has been involuntarily, though legally, removed.[3] Thus under *Gonzales*, the defendants have standing to complain.

---

[3] In *People* v. *Lovins* (1968), 10 Mich App 524, this Court held, on facts nearly identical to those of the present case, that a guest passenger is without standing if he has no proprietary or possessory interest in the automobile, was not present during the search, and disclaims any interest in the thing seized. *Gonzales* was not discussed.

We believe *Lovins* to be defective in two respects. First, and most importantly, it fails to take into account the substantive right recognized in *Gonzales*. Secondly, it requires as a prerequisite to standing that the accused admit an interest in the thing seized, a prerequisite expressly rejected by the Supreme Court in *Jones, supra:*

"The dilemma that has thus been created for defendants in cases like this has been pointedly put by Judge Learned Hand:

" 'Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma.' *Connolly* v. *Medalie* (CA 2, 1932) 58 F2d 629, 630.

"Following this holding, several Courts of Appeals have pinioned a defendant within this dilemma. (Citations omitted.) The Government urges us to follow the body of Court of Appeals' decisions and to rule that the lower courts, including the courts below, have been right in barring a defendant in a case like this from challenging a search because of his failure, when making his motion to suppress, to allege either that he owned or possessed the property seized or that he had a possessory interest in the premises searched greater than the interest of an 'invitee or guest.'

"Judge Hand's dilemma is not inescapable. It presupposes requirements of 'standing' which we do not find compelling. Two separate lines of thought effectively sustain defendant's standing in this case. (1) The same element in this prosecution which has caused a dilemma, *i.e.*, that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged. (2) Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below."

The validity of the search in question turns on the warrant requirement of the Fourth Amendment. The defendants cite *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881; 11 L Ed 2d 777) and contend that a warrant was needed. The people, on the other hand, contend that under *Cooper* v. *California, supra,* the search was valid without a warrant.

In *Preston,* the petitioner was arrested with two companions on a charge of vagrancy. The automobile in which they had been sitting was towed to a garage and subjected to a warrantless search which produced evidence later used to convict them on a charge of conspiring to rob a federally insured bank. In an opinion written by Mr. Justice Black, the Court concluded that since the search was neither pursuant to a warrant nor incident to the arrest, it was unreasonable:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. *Agnello* v. *United States, supra* (1925), 269 US 20, 31 (46 S Ct 4, 5, 70 L Ed 145, 148). Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See *Stoner* v. *California* (1963) 376 US 483 (84 S Ct 889; 11 L Ed 2d 856).

The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy. Cf. *United States v. Jeffers* (1951), 342 US 48, 51, 52 (72 S Ct 93, 95; 96 L Ed 59, 64, 65). Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See *Carroll v. United States, supra,* (1924), 267 US 132, 153 (45 S Ct 280, 285; 69 L Ed 543, 557). We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

In *Cooper,* the police arrested the petitioner for selling heroin and impounded his automobile pursuant to a California statute authorizing the forfeiture of automobiles used for the trafficking of narcotics. A full week after the arrest, the automobile was subjected to a warrantless search which produced a small piece of a brown paper sack. The piece of sack was subsequently offered in evidence, and the petitioner was convicted of selling heroin. The Court, again *per* Mr. Justice Black, pointed out that under *United States v. Rabinowitz* (1950) 339 US 56 (70 S Ct 430, 94 L Ed 653) the test of validity is "not whether it is reasonable to procure a search warrant, but whether the search was reasonable," and therefore a warrantless search may be valid even though it is not incident to an arrest, if it is reasonable. The

Court then concluded that a warrantless search of an impounded automobile is reasonable if it is closely related to the reason for which its occupants were arrested and the automobile was impounded:

"While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' the reason for and nature of the custody may constitutionally justify the search. Preston was arrested for vagrancy. An arresting officer took his car to the station rather than just leaving it on the street. It was not suggested that this was done other than for Preston's convenience or that the police had any right to impound the car and keep it from Preston or whomever he might send for it. The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car. This case is not *Preston,* nor is it controlled by it. Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States* v. *Rabinowitz,* (1950) 339 US 56, 66 (70 S Ct 430, 435, 94 L Ed 653,

660). Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding."

Mr. Justice Douglas, joined in dissent by the Chief Justice and two other members of the Court, argued that since the search was not incidental to an arrest, it was indistinguishable under the Fourth Amendment from that of *Preston*. He concluded his argument by saying:

"There are those who do not like *Preston*. I think, however, it states a healthy rule, protecting the zone of privacy of the individual as prescribed by the Fourth Amendment. These days police often take possession of cars, towing them away when improperly parked. Those cars are 'validly' held by the police. Yet if they can be searched without a warrant, the precincts of the individual are invaded and the barriers to privacy breached. Unless the search is incident to an arrest, I would insist that the police obtain a warrant to search a man's car just as they must do when they search his home."

There exists a third Supreme Court decision that bears on the present case, one that repudiates the principle underlying the holdings in *Rabinowitz* and *Cooper*. In *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034; 23 L Ed 2d 685), decided last term, the Court ruled, over the dissent of Justices Black and White, that a search incidental to an arrest is valid without a warrant only to the extent necessary to prevent the person arrested from grabbing a weapon or destroying evidence. In arriving at this ruling, the Court made it clear that under the Fourth Amendment a warrant is indispensable to a valid search except in those cases where an exigency makes the warrant requirement itself unreasonable.

The purpose of the warrant requirement was explained in the following terms:

"The amendment was in large part a reaction to the general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence. In the scheme of the amendment, therefore, the requirement that 'no Warrants shall issue, but upon probable cause,' plays a crucial part. As the Court put it in *Mc-Donald* v. *United States,* 335 US 451 (69 S Ct 191; 93 L Ed 153):

" 'We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.' *Id.,* at pp 455, 456 (69 S Ct, at p 193; 93 L Ed at p 158).

"Even in the *Agnello* case the Court relied upon the rule that '[b]elief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.' 269 US, at p 33 (46 S Ct, at p 6; 70 L Ed at p 149, 51 ALR 409). Clearly, the general requirement that a search warrant be obtained is not

lightly to be dispensed with, and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it.' *United States* v. *Jeffers*, 342 US 48, 51 (72 S Ct 93, 95; 96 L Ed 59)."

The Court then went on to discuss certain exigencies where it would be unreasonable to require a warrant, namely a protective search under *Terry* v. *Ohio* (1968), 392 US 1 (88 S Ct 1868; 20 L Ed 2d 889) and a search incidental to arrest. In regard to the latter, it was said:

"There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."

We note finally the Court's discussion of the "reasonableness" test of *Rabinowitz:*

"It is argued in the present case that it is 'reasonable' to search a man's house when he is arrested in it. But that argument is founded on little more than a subjective view regarding the acceptability of certain sorts of police conduct, and not on considerations relevant to Fourth Amendment interests. Under such an unconfined analysis, Fourth Amendment protection in this area would approach the evaporation point. It is not easy to explain why, for instance, it is less subjectively 'reasonable' to search a man's house when he is arrested on his front lawn—or just down the street—than it is when he happens to be in the house at the time of arrest. As Mr. Justice Frankfurter put it:

" 'To say that the search must be reasonable is to require some criterion of reason. It is no guide at

all either for a jury or for district judges or the police to say that an "unreasonable search" is forbidden—that the search must be reasonable. What is the test of reason which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and experience which it embodies and the safeguards afforded by it against the evils to which it was a response.' *United States* v. *Rabinowitz*, 339 US, at p 83 (70 S Ct, at p 443; 94 L Ed at p 669) (dissenting opinion)."

As mentioned earlier, the search in *Cooper* was conducted a full week after the arrest. Nothing in the facts of *Cooper* suggests that an exigency existed making the warrant requirement of *Chimel* unreasonable. For that reason, *Cooper* should no longer be followed in Michigan.[4]

Although *Cooper* should no longer be followed, it is dispositive here. As in *Cooper,* the search in the present case was directly related to the reason for which the defendants were arrested and the automobile was impounded. At the same time, *Cooper* was as yet unimpaired by *Chimel* when the search took place, and *Chimel* is not retroactive. *People* v. *Herrera* (1969), 19 Mich App 216. The search was valid without a warrant.

2. *The .22-caliber CO$_2$ pistol is not a dangerous weapon since it lacked the CO$_2$ apparatus.*

We find it unnecessary to decide whether a CO$_2$ pistol lacking the apparatus needed for firing a pellet is a dangerous weapon within the meaning of the statute, since its presence in the automobile in any event rendered it admissible in evidence to show that the defendants were aware of the other pistols in the

---

[4] Accord: *Steel* v. *State* (1970), — Ark — (450 SW2d 545). See, also, *State* v. *Keith* (Or App, 1970), 465 P2d 724, and *Ramon* v. *Cupp* (CA 9, 1970), 423 F2d 248, where the validity of *Cooper* is seriously questioned under the principles announced in *Chimel*.

automobile, pistols conceded to be dangerous weapons and allegedly "carried" by the defendants. As the prosecutor pointed out in his final argument, there were three men with an arsenal of three pistols.

3. *The court inadequately apprised the jury of the prosecution's burden of proof in respect to the element of knowledge.*[5]

After trial counsel had fully explained the defendants' theory of the case, with emphasis on their claim of ignorance, the court instructed the jury on the presumption of innocence, the prosecution's burden of proof, and the elements of the crime charged. Regarding the element of knowledge, the court said:

"It is the theory of the defense in this case that if there were weapons in the car they did not know they were there, they were not there with the permission of these defendants and, therefore, they are not guilty of carrying concealed weapons within the meaning of the statute which, if true, would cause a court and jury to render a verdict of not guilty.

\* \* \*

"If a person knowingly carries any such dangerous weapon concealed upon his person or concealed or otherwise, in any vehicle occupied or operated by him except in those places excepted by the statute as within the meaning of the statute, going armed with a dangerous weapon upon his person.

"Of course, if such weapon is carried in a motor vehicle through restraint, that is by force of someone else or by ignorance, without his knowing it, that would be a good defense."

The instruction was proper and, when coupled with the general instruction on the prosecution's burden of proof, adequately apprised the jury of the findings required for a verdict of guilty.

---

[5] For cases holding knowledge to be an element, see *People* v. *Petro* (1955), 342 Mich 299; *People* v. *Cunningham* (1969), 20 Mich App 699; *People* v. *Jerome I. Smith* (1970), 21 Mich App 717.

*4. The prosecutor should not have been permitted to amend the informations on the day of trial to charge both defendants with carrying all three pistols.*

The prosecution initially charged Sims with carrying the .38 and Perry with carrying the .22. Just before the trial started, the prosecutor asked that the .22- and .25-caliber pistols be named in the information against Sims and that the .25- and .38-caliber pistols be named in the information against Perry. Trial counsel objected to the naming of the .25 on the ground that it was seized illegally, but the court overruled his objection, saying that the legality of the search and seizure would be tested at trial. No further objection was made, and the informations were amended.

MCLA § 767.76 (Stat Ann 1954 Rev § 28.1016) provides in relevant part:

"The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury."

The amendment in question is one of substance, and not of form, and thus the defendants were entitled to a continuance upon request unless they were not misled or prejudiced by the amendment.

See *People* v. *Watson* (1943), 307 Mich 596, 601. However, the defendants neither requested a continuance before trial nor show now how they were prejudiced. At the same time, the record affirmatively shows that trial counsel was aware of the three pistols during the preliminary examination, that he, in fact, reminded the prosecutor that the informations did not mention all of the pistols, and that he was willing to proceed to trial on the amended informations. We perceive no error.

Affirmed.

All concurred.