PEOPLE v SMITH

Docket No. 69449. Argued May 5, 1983 (Calendar No. 12).—Decided
     December 28, 1984.

     Lee B. Smith was charged with receiving and concealing stolen
     property of a value over $100. Following a preliminary exami-
     nation, the Recorder's Court of Detroit, Craig S. Strong, J.,
     granted the defendant's motion to suppress certain evidence on
     the ground that the police should have obtained a warrant for
     its seizure. The Court of Appeals, D. C. Riley, P.J. (R. M. Maher
     and Cynar, JJ., concurring separately), affirmed, holding that
     the defendant had automatic standing to challenge the seizure
     (Docket No. 51035). The people appeal.

          In an opinion by Chief Justice Williams, joined by Justices
     Ryan, Brickley, and Boyle, the Supreme Court *held:*

          For a defendant to attack its propriety, a search and seizure
     must have infringed upon an interest protected by the proscrip-
     tion of the Michigan Constitution against unreasonable
     searches and seizures. In determining whether such an in-
     fringement occurred, the trial court must decide, upon consider-
     ation of the totality of the circumstances, whether the defen-
     dant had an expectation of privacy in the object of the search

---

REFERENCES FOR POINTS IN HEADNOTES

[1-6, 9] 29 Am Jur 2d, Evidence § 418 *et seq.*
[1, 2, 5] 68 Am Jur 2d, Searches and Seizures § 49.
[3, 4] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 6.
[6, 7] 29 Am Jur 2d, Evidence § 411 *et seq.*
     68 Am Jur 2d, Searches and Seizures § 35.
     Interest in property as requisite of accused's standing to raise
          question of constitutionality of search and seizure. 4 L Ed 2d
          1999.
     Federal Constitution as affecting admissibility of evidence obtained
          by illegal search and seizure. 84 ALR2d 959.
     Nature of interest in, or connection with premises searched as
          affecting standing to attack legality of search. 78 ALR2d 246.
     Modern status of rule governing admissibility of evidence obtained
          by unlawful search and seizure. 50 ALR2d 531.
[8] 68 Am Jur 2d, Searches and Seizures § 41 *et seq.*
[9] 29 Am Jur 2d, Evidence § 418.

and seizure and whether that expectation is one that society is prepared to recognize as reasonable.

1. A defendant does not have automatic standing to challenge a search or seizure without a warrant. The "automatic standing" rule was a response by the Supreme Court of the United States to a practice in federal courts in which a defendant was required to admit ownership or possession of the property seized or the premises searched at a suppression hearing and risk the use of the admission against him during trial in order to challenge a search or seizure, or to forego challenging evidence as having been illegally obtained. The dilemma of asserting Fourth Amendment rights only by giving up the Fifth Amendment right against self-incrimination was eliminated when the Supreme Court of the United States later held that testimony at a suppression hearing could not be used as evidence of guilt at trial.

2. Constitutional protections generally are personal. They cannot be asserted vicariously, but only at the insistence of the person whose rights are infringed. The right to challenge evidence obtained as a result of an illegal search or seizure is personal to the person whose right to privacy is violated. A rule providing automatic standing to challenge such a search or seizure departs from this principle, providing a defendant with standing regardless of whether personal or vicarious rights are asserted.

3. The defendant in this case is not afforded greater protection against search or seizure under the state constitution than that afforded by the federal. The difference in the wording of the two provisions does not provide a basis for affording greater protection under the state constitution by requiring the adoption of an "automatic standing" rule. With respect to this case, the words "effects," used in the Fourth Amendment, and "possessions," used in the state constitution, are virtually identical in meaning and are often used interchangeably.

4. The parameters of the reasonable expectation of privacy test are not delimited by a fine line. No exact template is provided that can be mechanically imposed upon a set of facts to determine whether standing is warranted. The ultimate question is whether the claim of an expectation of privacy is reasonable in the light of all surrounding circumstances. No single factor invariably is determinative of what is reasonable. Of significance is whether the person claiming an expectation of privacy took such precautions to maintain privacy as are customarily taken by persons seeking privacy, the manner in which the area searched was used, whether historically the

type of intrusion has been perceived to be objectionable, and whether the expectation is an expectation that society is prepared to recognize as reasonable.

5. Because, in this case, the issue of standing was not raised in the trial court, but only in the Court of Appeals, the record is inadequate for a determination whether the defendant's expectation of privacy was reasonable, and the case must be remanded for a hearing on the issue of the defendant's standing to challenge the search and seizure of the trailer.

Reversed and remanded.

Justice Kavanagh, joined by Justice Levin, dissenting, stated that any defendant against whom the state intends to offer evidence obtained as a result of an unreasonable search and seizure has standing to challenge its introduction.

1. The proscription of unreasonable searches and seizures in the state constitution operates as a general injunction against the state and its agents. Evidence acquired as a result of an unlawful search and seizure is tainted and may not be admitted regardless of whether it is offered against a person whose own subjective expectation of privacy has not been invaded. The evidence is excluded to enforce a constitutional safeguard. Thus, any criminal defendant has standing to challenge the admission of evidence obtained as a result of an unlawful search and seizure.

2. In this case, the search and seizure of a stolen trailer without a warrant was unlawful. At the time of the seizure, the investigating officers did not have probable cause to believe that the trailer was evidence of a crime. At best, the officers had some suspicions that the vehicle was in some way related to a theft.

Justice Levin, joined by Justice Cavanagh, dissenting, stated that a defendant charged with a crime in which possession is an essential element has automatic standing under the constitution to challenge the seizure of evidence of possession. The doctrinal basis of the standing doctrine developed in the federal courts as a limitation on the exclusionary rule is questionable. Ordinarily a person who is significantly affected adversely by governmental action may assert that the action is violative of a constitutional limitation. To require a person who is the object of governmental action to show more than an adverse effect of the asserted constitutional violation, appears to be inconsistent with traditional standing requirements. To impose greater restrictions on the vindication of constitutional limitations designed to protect personal liberty is questionable. Rather, the legitimacy of the standing doctrine should be reconsidered. The

constitution proscribes unreasonable searches and seizures and does not speak of standing requirements based on expectations of privacy. In this case, because the defendant was charged with a possessory offense he has standing to object to seizure of evidence of the offense offered at trial. Because the seizure failed to satisfy the requirements of the plain view doctrine, the evidence should be suppressed.

118 Mich App 366; 325 NW2d 429 (1982) reversed.

*People v Godwin,* 94 Mich App 286; 288 NW2d 354 (1979), overruled.

### OPINION OF THE COURT

1. SEARCHES AND SEIZURES — STANDING — REASONABLE EXPECTATION OF PRIVACY.

   A defendant must have a reasonable expectation of privacy in the object of a search or seizure which, in the light of all the surrounding circumstances, is one that society is prepared to recognize as reasonable, in order to challenge the search or seizure (Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — STANDING — REASONABLE EXPECTATION OF PRIVACY.

   A defendant does not have automatic standing to challenge a search or seizure, but must be seen in the light of all the surrounding circumstances to have a reasonable expectation of privacy in the object of the search or seizure which society is prepared to recognize as reasonable (Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES — STANDING — RIGHT OF PRIVACY.

   The right to challenge evidence obtained as a result of an illegal search or seizure is personal to the person whose right to privacy is violated; a rule providing automatic standing to challenge such search or seizure would depart from this principle, providing a defendant with standing regardless of whether personal or vicarious rights are asserted (Const 1963, art 1, § 11).

4. SEARCHES AND SEIZURES — STANDING — RIGHT OF PRIVACY.

   A defendant who parked a stolen trailer in a place accessible to the public was not afforded greater protection against search or seizure under the state constitution than that afforded by the federal; the difference in the wording of the two provisions does not provide a basis for affording greater protection under the state constitution by requiring the adoption of an "automatic standing" rule (US Const, Am IV; Const 1963, art 1, § 11).

5. SEARCHES AND SEIZURES — STANDING — REASONABLE EXPECTATION OF PRIVACY.

Whether an expectation of privacy is reasonable is not dependent upon a single factor, but upon all the surrounding circumstances; of significance is whether the person claiming an expectation of privacy took such precautions to maintain privacy as are customarily taken by persons seeking privacy, the manner in which the area searched was used, whether historically the type of intrusion has been perceived to be objectionable, and whether the expectation is an expectation that society is prepared to recognize as reasonable (Const 1963, art 1, § 11).

DISSENTING OPINION BY KAVANAGH, J.

6. SEARCHES AND SEIZURES — WITHOUT A WARRANT — STANDING.

*Any defendant against whom the state intends to offer evidence obtained as a result of an unreasonable search and seizure has standing to challenge its introduction (Const 1963, art 1, § 11).*

7. SEARCHES AND SEIZURES — WITHOUT A WARRANT — EVIDENCE.

*Evidence acquired as a result of an unlawful search and seizure is tainted and may not be admitted regardless of whether it is offered against a person whose own subjective expectation of privacy has not been invaded (Const 1963, art 1, § 11).*

8. SEARCHES AND SEIZURES — WITHOUT A WARRANT — PROBABLE CAUSE.

*The search and seizure of a stolen trailer without a warrant was unlawful, where, at the time of the seizure, the investigating officers did not have probable cause to believe that the trailer was evidence of a crime and at best had some suspicions that the vehicle was in some way related to a theft (Const 1963, art 1, § 11).*

DISSENTING OPINION BY LEVIN, J.

9. SEARCHES AND SEIZURES — STANDING — POSSESSORY CRIMES.

*A defendant charged with a crime in which possession is an essential element has automatic standing under the constitution to challenge the seizure of evidence of possession (Const 1963, art 1, § 11).*

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Edward Reilly Wilson*, Deputy Chief, Civil and Appeals, and *Timothy A. Baughman*, Principal Attorney, Appeals, for the people.

*Warren D. Bracy* for the defendant.

WILLIAMS, C.J. The issue in this case is what should be the proper test for standing to seek suppression of illegally seized evidence where the requirements for both standing and the offense charged involve proof of a possessory interest. This issue relates to the police seizure of a stolen trailer from the open access parking lot of an abandoned restaurant. As to whether the defendant in this case has standing to challenge the search and seizure of that trailer, due to the inadequacy of the record we think it appropriate to remand this case to the trial court for a new suppression hearing. In addition, since the determination of the standing issue may make it unnecessary to resolve a second issue of whether the evidence resulting from the seizure should have been excluded, we will not reach this latter issue.

Defendant claimed "automatic standing," citing *People v Godwin,* 94 Mich App 286; 288 NW2d 354 (1979), and arguing that because Const 1963, art 1, § 11 varies slightly from US Const, Am IV, it requires a more liberal interpretation.[1] *Godwin* relied on *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960). Plaintiff contended that the test of "reasonable expectation of privacy" set forth in *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980), which overruled the "automatic standing" test of *Jones,* applies.

For this Court, this issue under art 1, § 11 of the

[1] The defendant does not argue that he has "standing" to challenge the seizure under Am IV of the United States Constitution. US Const, Am IV; US Const, Am XIV. Since today we adopt a standard nearly identical to the federal standard, see *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980); *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), defendant's "standing" rights under the federal constitution will be the same as those under the Michigan Constitution.

Michigan Constitution is for all intents and purposes an issue of first impression since *Jones* and *Salvucci*. For the United States Supreme Court, this issue under Am IV was settled in *Salvucci*. Under *Salvucci,* pp 92, 95, the test for standing is a "reasonable expectation of privacy." Furthermore, *Salvucci,* p 85, expressly overruled the *Jones* test of "automatic standing."

This Court's first inquiry must be whether there are any policy considerations which commend the "automatic standing" test over the "reasonable expectation of privacy" test, and whether anything in the differences in language between art 1, § 11 and Am IV requires us to choose one test over the other. Upon consideration, we conclude that there are no policy considerations which incline us to adopt the "automatic standing" test and that there is nothing in the differences in language between art 1, § 11 and Am IV that requires or suggests the adoption of the "automatic standing" test.[2] We adopt a "reasonable expectation of privacy" test consonant with our search and seizure precedents.

[2] Of course, it is not necessary that the wording of the Michigan Constitution be different from that of the United States Constitution in order for this Court to interpret our constitution more liberally than the United States Supreme Court interprets the language of the federal constitution. It is true that this Court cannot interpret a similar provision in the Michigan Constitution less liberally than the United States Supreme Court interprets the United States Constitution, but the opposite is not true. Cf. *People v Beavers,* 393 Mich 554, 562; 227 NW2d 511 (1975), with *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971) (participant monitoring). See also *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973) (entrapment); *People v White,* 390 Mich 245; 212 NW2d 222 (1973) (double jeopardy). To the extent that *People v Secrest,* 413 Mich 521; 321 NW2d 368 (1982) (discussed below) implies that this Court can impose a higher standard under the state than the federal search and seizure provision *only* because of differences in language, it is obviously wrong. Furthermore, *Secrest* does not show how the differences in language justify a higher standard under the Michigan Constitution. The point here, however, is that there is no difference in art 1, § 11 that *compels* a different interpretation and there is no persuasive policy reason to commend a different interpretation in this Court's discretion.

We reverse the judgment of the Court of Appeals and overrule *Godwin*.

## I. Facts

Defendant Smith was charged with receiving and concealing stolen property of a value over $100, to wit: a 45-foot van-type trailer. MCL 750.535; MSA 28.803. Following the preliminary examination, defendant, *inter alia*, filed a motion to suppress the trailer as evidence against him. Thereafter, an evidentiary hearing was conducted at which only one witness testified. That witness, Norman Anderson, was an investigator from the Wayne County Prosecutor's Office.

In October of 1979, Mr. Anderson was provided with information concerning the theft of certain automobile transmissions. He learned that the stolen transmissions had been sold to a company in Dallas, Texas. In November of 1979, Mr. Anderson went to Dallas to investigate this report. He interviewed several employees of the recipient company. He was told that two tractor-trailer rigs had delivered the transmissions. One of the tractors was a Peterbilt and the other was a Kenworth. The trailers were silver and appeared to be new. In addition, Mr. Anderson received four checks that had been given to the drivers of the vehicles in payment for the transmissions. One of the checks had been made payable to a Mr. Carr, and the other three were made payable to defendant Smith. The checks were indorsed by the parties and were marked with their operator license numbers. All of the checks had been cashed. These facts were the basis of a different case against Messrs. Carr and Smith.

Several days after Mr. Anderson returned to Detroit, an attempt was made to locate Mr. Carr

and defendant Smith. On the morning of November 14, 1979, while in the company of FBI agent Tom Love and State Police officer Lyle Schroeder, Mr. Anderson went to Mr. Carr's residence on Gainesboro, four and one-half blocks from Avon and Grand River in Detroit. They knocked on Mr. Carr's door, but no one answered. The officers drove away, and at the intersection of Avon and Grand River they saw two tractor-trailer rigs parked in an abandoned restaurant lot. There was a fence around the lot, with two large openings in it for access. Upon closer inspection of the vehicles, the officers observed that one of the tractors was a Kenworth and the other was a Peterbilt. Inside the window of the Peterbilt, one of the officers saw a nameplate bearing defendant Smith's name. The trailers looked relatively new. The Kenworth tractor was still attached to one of the trailers, and the Peterbilt was parked immediately in front of the second trailer. The first trailer bore vehicle identification numbers (VIN) indicating that it was a Fruehauf. The other trailer was unmarked except for two mud flaps on which were printed the name Fruehauf.

The officers ran a check on the license plates of the vehicles. They learned that the license plates on both trailers were registered to defendant Smith. In addition, although the plates had different numbers on them, they had both been assigned to the same Fruehauf trailer. The officers located the VIN on the first trailer and discovered that it was the trailer to which both license plates had been assigned. They were unable to find the VIN on the second trailer. They found the spot where the VIN plate is normally located, but the plate had been removed. The rivet marks were still apparent. The trailer also looked as though it had recently been painted.

Mr. Anderson left the scene and returned to the police station. The State Police officer remained at the scene. In an effort to find out where the *hidden* VIN on the second trailer might be, Mr. Anderson attempted to contact someone in the commercial theft department. Mr. Anderson was unsuccessful in his attempt and thus decided to call Fruehauf. An employee of the company told him where the hidden VIN was located on Fruehauf trailers. Mr. Anderson returned to the parking lot. He had been gone for approximately 1 to 1-1/2 hours.

When Mr. Anderson arrived at the lot, he crawled under the second trailer to look for the hidden VIN, but he was unable to find it. Apparently, different manufacturers put the hidden VIN in different locations. The officers then compared the physical appearance of the first trailer, which they knew to be a Fruehauf, with that of the second trailer. The two trailers were substantially dissimilar. The officers concluded that the second trailer was not in fact a Fruehauf. The officers then called a tow truck to have the trailer removed. About 1 to 1-1/2 hours later, the tow truck arrived. The trailer was towed to Cover Service in Romulus. One of the officers called the National Auto Theft Bureau to have the trailer identified. Personnel from the bureau arrived the next day, located the hidden VIN, and confirmed that the trailer was stolen.

Mr. Anderson testified that approximately 3 to 3-1/2 hours elapsed from the time he first saw the trailer until the time the trailer was towed away. Mr. Anderson further stated that after they first discovered the trailer, they discussed the possibility of obtaining a search warrant, but decided against it. No search warrant of any kind was ever obtained.

Upon the basis of the above information, the

trial court granted defendant's motion to suppress, ruling that the officers should have obtained a warrant before they seized the trailer. On appeal, the prosecutor contended that defendant lacked "standing" to challenge the propriety of the seizure.[3] The Court of Appeals rejected this argument, holding that defendant had "automatic standing" to challenge the seizure under art 1, § 11 of the Michigan Constitution, and that the police were obliged to obtain a warrant before they seized the trailer. *People v Smith,* 118 Mich App 366; 325 NW2d 429 (1982).

## II. DEFENDANT'S CONTENTION AS TO STANDING

To begin with, the issue here is not whether the government had the right to seize the trailer. The issue is whether the defendant had "standing" to object to the introduction of evidence of the results of that seizure.

"Standing has been called one of 'the most amorphous [concepts] in the entire domain of public law.' " *Flast v Cohen,* 392 US 83, 99; 88 S Ct 1942; 20 L Ed 2d 947 (1968). "Standing" relates to

---

[3] We note at this juncture that defendant contends that this Court should not have reviewed the "standing" issue because the prosecution did not raise the issue in the trial court. Normally, this Court will not consider issues not raised both in the trial court and the Court of Appeals. See *People v Crawl,* 401 Mich 1, 30-32, and fn 20; 257 NW2d 86 (1977) (opinion of LEVIN, J.). In fact, in *People v Tyler,* 399 Mich 564, 571; 250 NW2d 467 (1977), *aff'd* 436 US 499, 512, fn 7; 98 S Ct 1942; 56 L Ed 2d 486 (1978), we declined to review the exact issue present herein because the prosecutor failed to raise it in the Court of Appeals. See also *People v Warner,* 401 Mich 186; 258 NW2d 385 (1977). In the instant case, the prosecutor did raise the issue in the Court of Appeals. Because we agree with the Court of Appeals that the resolution of this issue is necessary to a proper determination of the case, 118 Mich App 370, and because this issue has caused much confusion and courts have failed to apply the true rule of law, *People v Crittle,* 390 Mich 367, 371; 212 NW2d 196 (1973), we consider it at this time. See *People v Crawl, supra,* pp 30-32, and fn 20 (opinion of LEVIN, J.). And see *State v Hutchinson,* 404 So 2d 361, 365-366 (Fla App, 1981).

civil[4] as well as criminal matters.[5] The basis for "standing" to challenge a search or seizure may be possession,[6] physical location,[7] or right to privacy,[8] among others.

Defendant contends there is another and different basis for standing from any of the above, *i.e.,* "automatic standing," "where the defendant is charged with an offense that includes as an [essential element of the] offense charged the possession of seized evidence at the time of the contested search and seizure." Defendant relies on the Michigan Court of Appeals case of *People v Godwin, supra.*[9] *Godwin* relied on *Jones v United States.*

It is true that both *Godwin* and *Jones* support defendant's contention. However, the "automatic standing" rule of *Jones* was limited in *Rakas v Illinois,* 439 US 128, 142-143; 99 S Ct 421; 58 L Ed 2d 387 (1978), and overruled in *United States v Salvucci, supra,* p 85. Defendant, however, does not discuss the federal law and relies on Const 1963, art 1, § 11 and *Godwin* rather than on US Const, Am IV.[10]

If defendant convinces us that the rationale in *Godwin* and *Jones* is superior to that in *Rakas* and *Salvucci* and that Const 1963, art 1, § 11 should be construed to grant defendants greater "standing" rights than they possess under US Const, Am IV,

[4] See, *e.g., Shavers v Attorney General,* 402 Mich 554, 586 ff.; 267 NW2d 72 (1978), *cert den sub nom Allstate Ins Co v Kelley,* 442 US 934; 99 S Ct 2869; 61 L Ed 2d 303 (1979).

[5] See, *e.g., People v Warner,* 401 Mich 186, 200-209; 258 NW2d 385 (1977).

[6] See, *e.g., People v Norwood,* 312 Mich 266, 272; 20 NW2d 185 (1945).

[7] See, *e.g., People v Gonzales,* 356 Mich 247, 257; 97 NW2d 16 (1959).

[8] See, *e.g., Salvucci, supra,* pp 92, 95.

[9] Defendant's claim on the merits was accepted by the trial court. 118 Mich App 374.

[10] See fn 1.

we should consider adopting the "automatic standing" rule. However, we are not so convinced on either score.

Defendant's arguments for his rationale fail to persuade us for at least the following three reasons:

1. The self-incrimination rationale on which *Godwin* and *Jones* rely is inapplicable because, in fact, trial procedures protect defendant against self-incrimination.

2. The "automatic standing" rule attempts to invoke an art 1, § 11-Am IV right *vicariously,* but the art 1, § 11-Am IV right, like other rights, is *personal.*

3. While we have on occasion interpreted art 1, § 11 more liberally than the United States Supreme Court has interpreted Am IV, we do not find anything in the differences in language between the state and federal constitutions or in our precedents that requires us to adopt defendant's position.[11]

### III. SELF-INCRIMINATION RATIONALE FOR STANDING IS INAPPLICABLE

The first reason for rejecting defendant's rationale for suppression is that it relies on the right against self-incrimination, but there is actually no self-incrimination involved. Defendant urges the "automatic standing" rule to protect against placing the defendant in a so-called "dilemma." The "dilemma" was posited by the United States Supreme Court in *Jones v United States, supra,* p 262, to support the adoption of the "automatic

[11] See fn 2.

standing" rule under the Fourth Amendment.[12] It was premised upon the fact that various federal circuit courts of appeal at that time had required the defendant to have "standing," either to "have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched." *Jones, supra,* p 261. Since at that time there was no rule barring the admission against the defendant at trial of evidence introduced at a suppression hearing, the defendant frequently found himself faced with the "dilemma" of choosing between establishing "standing" by alleging that he possessed the item, thereby risking the possibility that such evidence would be used against him at trial, or not establishing "standing" and not being permitted to seek suppression of illegally obtained evidence. The *Jones* Court found this situation intolerable in cases where possession of the seized evidence was an essential element of the charged offense. In these cases, possession would both confer "standing" and convict. Therefore, the *Jones* Court sought to remedy this situation by giving the defendant "automatic standing" to seek the suppression of evidence.

In the instant case, defendant does not allege that he has been pinioned by this "dilemma." In fact, in the wake of *Simmons v United States,* 390 US 377, 390-394; 88 S Ct 967; 19 L Ed 2d 1247 (1968), no defendant can find himself faced with this "dilemma." The *Simmons* Court held that pursuant to the federal constitution a defendant's

---

[12] It should be noted that although the *Jones* Court relied in substantial part on Rule 41(e) of the Federal Rules of Criminal Procedure, the decision has subsequently been interpreted as being equally applicable to the "standing" required by the constitution to attack an unconstitutional search or seizure. See *Rakas v Illinois, supra,* p 132, fn 2, citing *United States v Calandra,* 414 US 338, 348-349, fn 6; 94 S Ct 613; 38 L Ed 2d 561 (1974), and *Alderman v United States,* 394 US 165, 173, fn 6; 89 S Ct 961; 22 L Ed 2d 176 (1969).

suppression hearing testimony cannot be used as evidence of guilt against the defendant at trial.[13] We have recognized the principle set forth in *Simmons,* and we reaffirm our commitment to that principle. See *People v DeClerk,* 400 Mich 10, 18-19; 252 NW2d 782 (1977). As a consequence, the fundamental tenet upon which the "dilemma" was posited has been eliminated, and along with it the "dilemma" itself. See *United States v Salvucci, supra,* pp 89-90. See also *Brown v United States,* 411 US 223, 228; 93 S Ct 1565; 36 L Ed 2d 208 (1973). Therefore, we cannot accept the "dilemma" as supporting the adoption of the "automatic standing" rule.

The Court of Appeals in this case chose to follow the rationale of Justices Marshall and Brennan in their dissent in *Salvucci.* 118 Mich 374. In his opinion, Justice Marshall argued:

"I cannot agree that *Simmons* provides complete protection against the 'self-incrimination dilemma' * * *. Respondents contend that the testimony given at

[13] Referring to *Simmons,* where the defendant's suppression hearing testimony was used against him at trial in the government's case in chief, the Court in *United States v Salvucci, supra,* pp 89-90 stated:

"The Court found that, in effect, the defendant was

" 'obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.' *[Simmons],* at 394.

"This Court's ruling in *Simmons* thus not only extends protection against this risk of self-incrimination in all of the cases covered by [the "automatic standing" rule], but also grants a form of 'use immunity' to those defendants charged with nonpossessory crimes. In this respect, the protection of *Simmons* is therefore broader than that of [the "automatic standing" rule]. Thus, as we stated in *Brown v United States,* 411 US 223, 228; 93 S Ct 1565; 36 L Ed 2d 208 (1973), '[t]he self-incrimination dilemma * * * can no longer occur under the prevailing interpretation of the Constitution [in *Simmons].* ' "

the suppression hearing might be held admissible for impeachment purposes and, while acknowledging that that question is not before us in this case, the majority broadly hints that this is so. * * * The use of the testimony for impeachment purposes would subject a defendant to precisely the same dilemma, unless he was prepared to relinquish his constitutional right to testify in his own defense, and would thereby create a strong deterrent to asserting Fourth Amendment claims. * * * *Simmons*, therefore, does not eliminate the possibility that a defendant will be deterred from presenting a Fourth Amendment claim because of 'the risk that the words which he utters may later be used to incriminate him.' " 448 US 96, 97.

With due respect to the Court of Appeals and Justices Marshall and Brennan, we cannot agree that the possibility of defendant's testimony in favor of suppression being used to impeach him in the main trial justifies the "automatic standing" rule. It is one thing to protect a defendant from the dilemma of having to testify that there was possession to obtain standing at the cost of having that testimony used to incriminate him at trial. It is an entirely different proposition to give defendant protection against exposure of his lying at trial by denying the use of his suppression motion testimony.[14] See *People v Graham*, 386 Mich 452; 192 NW2d 255 (1971); *Harris v New York*, 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971). However, we agree with the majority in *Salvucci* that the issue whether the *Simmons* privilege should extend to

--------

[14] Defendant also suggests that *Simmons* is not broad enough because it does not protect against the possibility that the prosecutor's access to suppression hearing testimony could provide him with information advantageous to trial preparation. This argument, however, is applicable to nonpossessory as well as possessory offenses, and hence in order to protect against such a possibility, "automatic standing" would have to be accorded to all defendants. Even the defendant herein does not advocate that we adopt such a posture. See *United States v Salvucci, supra*, p 93, fn 7.

exclude such impeachment is best treated in a proper case. *Salvucci, supra,* p 94.

In sum, we do not find merit in any of the above arguments advanced that defendant should have "automatic standing" to argue suppression of evidence because of an allegedly illegal search or seizure, because with the *Simmons* change in procedure the defendant's right against self-incrimination is not jeopardized.

## IV. CONSTITUTIONAL RIGHTS ARE PERSONAL ONLY

The second reason for rejecting defendant's rationale for suppression is that the "automatic standing" rule attempts to invoke the rule for suppression of illegal search or seizure evidence vicariously, although the art 1, § 11-Am IV right is personal. At the outset, we note that constitutional protections are generally personal. They cannot be asserted vicariously, but rather only "at the instance of one whose own protection was infringed by the search and seizure." *Simmons v United States, supra,* p 389. This Court enunciated this principle as follows:

"The right to suppression is personal to the one whose right to privacy was violated." *People v Warner,* 401 Mich 186, 203; 258 NW2d 385 (1977) (opinion of WILLIAMS, J.).

Stated differently, only an individual who "belongs to the class for whose sake the constitutional protection is given" can seek to invoke its protection. *New York ex rel Hatch v Reardon,* 204 US 152, 160; 27 S Ct 188; 51 L Ed 415 (1907). See *People v Warner, supra,* pp 203, 209; *People v Norwood,* 312 Mich 266, 272; 20 NW2d 185 (1945), and cases cited therein; *People v Oaks,* 251 Mich

253, 255; 231 NW 557 (1930); *People v Joshua,* 32 Mich App 581, 585; 189 NW2d 105 (1971), *lv den* 386 Mich 758 (1971), *cert den* 409 US 853; 93 S Ct 183; 34 L Ed 2d 96 (1972); *United States v Salvucci, supra,* p 86; *Rakas v Illinois, supra,* pp 133-134; *Brown v United States, supra,* p 230; *Alderman v United States,* 394 US 165, 171-172, 174; 89 S Ct 961; 22 L Ed 2d 176 (1969); *Simmons v United States, supra,* p 389; *Jones v United States, supra,* p 261. In urging us to embrace the "automatic standing" rule, defendant is necessarily advocating a departure from the above well-settled principles because the "automatic standing" rule would provide a defendant with "standing" regardless of whether he was asserting his own rights or those of another. See *Rakas v Illinois, supra,* p 135, fn 4.

## V. Should the Michigan Constitution Be Interpreted More Liberally Than the Federal?

The third reason for rejecting defendant's rationale for suppression is that he fails to advance any meritorious reason why art 1, § 11 should be interpreted any differently than Am IV. Defendant argues that this Court has traditionally imposed higher standards under art 1, § 11 than the United States Supreme Court has imposed under the Fourth Amendment. The two provisions follow:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state." Const 1963, art 1, § 11.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV.

The defendant seems to argue that the more liberal standing under the Michigan Constitution has been attributed to the difference in wording between art 1, § 11 and the Fourth Amendment. See *People v Secrest,* 413 Mich 521, 525; 321 NW2d 368 (1982). He points out that where the Fourth Amendment uses the word "effects," the Michigan provision substitutes the word "possessions." He concludes that this distinction provides a basis for affording greater rights under art 1, § 11 than those enjoyed under the Fourth Amendment and that, hence, we should adopt the "automatic standing" rule.

We acknowledge that in the past we have on occasion offered defendants greater protection under art 1, § 11 than the Supreme Court of the United States has offered under the Fourth Amendment, and in a proper case we will do so again. We are unable to accept, however, defendant's suggestion that this has consistently been the case. In *People v Secrest, supra,* p 525, we stated that the differences in wording between art 1, § 11 and the Fourth Amendment could provide a basis for imposing higher standards under art 1, § 11 than under the Fourth Amendment:

"There are differences in wording between the two. As a result, we have imposed a higher standard under the state provision than the federal where the item seized is not one within the proviso of the third sentence of art 1, § 11. *People v Moore,* 391 Mich 426, 435;

216 NW2d 770 (1974). *People v Beavers,* 393 Mich 554, 567-568; 227 NW2d 511 (1975)."[15]

Nonetheless, we have never stated that the difference in wording between art 1, § 11, exclusive of the proviso of the third sentence, and the Fourth Amendment mandates a higher standard in every case. In fact, this Court, in *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983), specifically stated that "we have not * * * created any per se higher standard" and that we will only accord defendants greater rights "where there is compelling reason." In the present case, we are not persuaded that such a compelling reason exists.

In fact, we are not even convinced that the difference in wording is indeed a difference in meaning as it affects this case. The terms "possessions" and "effects" are virtually identical in meaning and are often used interchangeably. *Webster's New Collegiate Dictionary* (2d ed), p 262, supports this conclusion in that it defines "effects" as "[g]oods; *possessions"* (emphasis added).

Thus, we reject defendant's argument that the difference in wording between art 1, § 11 and the Fourth Amendment requires adopting the "automatic standing" rule which would offer defendants greater protection under the state constitution than under the federal constitution.

VI. "REASONABLE EXPECTATION OF PRIVACY" TEST

Since neither constitution nor public policy requires or commends the "automatic standing" test, the next obvious question is what test should this Court adopt for search and seizure "standing." In the past we have employed various tests to determine whether a defendant has "standing." We

[15] See fn 2.

now find that the development of jurisprudence has made these tests obsolete. We therefore adopt a new test, the "reasonable expectation of privacy" test.

## A. *Prior Michigan Standing Cases*

Historically, the earlier Michigan standing cases used a possessory test. *People v Norwood, supra,* p 272 (rights in the premises); *People v Oaks, supra,* p 255 ("merely a tenant of a stall in [another's] garage"—"not defendant's home" insufficient); *People v Bartoletta,* 248 Mich 499, 501; 227 NW 763 (1929) ("[w]hether the officers were in and at the saloon in violation of the constitutional right of its proprietor to be secure against unreasonable searches and seizures is no concern of defendant" driving a car full of beer to a saloon); *People v Azukauckas,* 241 Mich 182, 184; 216 NW 408 (1927) ("[t]he protection accorded homes may well be left to the householder to assert and we can see no reason for letting the 'guests' raise the question of immunity"); *People v Anscomb,* 234 Mich 203, 206; 208 NW 45 (1926) ("difficult to see how this defendant could complain of an act unlawfully committed in the search of another's home"). All these cases arose during the era of Prohibition and demonstrate two things. First, "standing" is related to ownership. Second, "standing" is a personal right that cannot be exercised vicariously.

These cases parallel the contemporary federal case law to a considerable extent. See *Jones v United States, supra,* pp 265-267. However, it is a parallel development rather than a following of precedent, because the Michigan cases were decided at a time when the states were free to fashion their own rules as to the exclusion of evidence. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *Wolf v Colorado,* 338 US 25;

69 S Ct 1359; 93 L Ed 1782 (1949). See also 78 ALR2d 246, 250-251.

The next significant and only other search and seizure standing case is *People v Gonzales,* 356 Mich 247; 97 NW2d 16 (1959). In *Gonzales* an automobile was stopped by two police officers after they observed that a headlamp was not burning. The driver was taken back to the scout car by one of the officers for purposes of issuing a citation. Meanwhile, the second officer ordered the passengers, one of them the defendant, out of the car "so he 'could check it.'" *People v Gonzales, supra,* p 251. He then saw the butt of a pistol sticking out from under the front seat and picked it up. The defendant admitted ownership of the gun, and a search of his person uncovered a .38 caliber cartridge. On the merits, the Court held that under these facts the police had no right to search the car in which defendant was riding.

With reference to defendant's "standing" to attack the constitutionality of the search and seizure, and without citation of authority, this Court stated:

"Further, we believe that on the facts in this case defendant had the right to raise the constitutional objection. There is no showing of any waiver of the objection by anyone. And though defendant apparently had only the status of a passenger, when the first requirement of the search (and a material one to its outcome) was that defendant remove himself from the seat in the automobile where he had a right to be, we regard the search as directly affecting him." *People v Gonzales, supra,* p 257.

It is clear from its language that this Court was particularly impressed with defendant's right to be in the car. See *People v Sims,* 23 Mich App 194,

198-200; 178 NW2d 667 (1970), *aff'd* 385 Mich 621;
189 NW2d 41 (1971).[16]

*Gonzales* preceded the federal *Jones* case by a year,
but its holding was similar to that of *Jones* in
rejecting the refusal to grant standing to "guests"
and "invitees." *Jones, supra,* p 265. Thus, *Gonzales,*
without expatiating on the subject, moved away from
the narrow "ownership" test for standing of the
previous cases. *Jones,* however, did speak more fully
to what *Gonzales* had in fact indicated. *Jones* spoke
as follows:

"We are persuaded * * * that it is unnecessary and
ill-advised to import into the law surrounding the con-
stitutional right to be free from unreasonable searches
and seizures subtle distinctions, developed and refined
by the common law in evolving the body of private
property law which, more than almost any other
branch of law, has been shaped by distinctions whose
validity is largely historical. Even in the area from
which they derive, due consideration has led to the
discarding of these distinctions in the homeland of the
common law. See Occupiers' Liability Act, 1957, 5 and 6
Eliz 2, c 31, carrying out Law Reform Committee, Third
Report, Cmd 9305. Distinctions such as those between
'lessee,' 'licensee,' 'invitee' and 'guest,' often only of
gossamer strength, ought not to be determinative in
fashioning procedures ultimately referable to constitu-
tional safeguards." *Jones v United States, supra,* pp
266-267. See *Rakas v Illinois, supra,* p 143; *People v
Sims, supra,* pp 198-200.

## B. *Choosing a New Standing Test*

Turning to formulating a new standard, it is

[16] In *Sims,* this Court summarily affirmed a Court of Appeals
decision which acknowledged and discussed *Jones v United States* and
*People v Gonzales.* We do not read *Sims* as adopting *Jones* under art
1, § 11. Rather, *Sims,* although relying on *Gonzales,* which was
decided under art 1, § 11, seems to have been based upon the Fourth
Amendment. Alternatively, *Sims* could be read as having been decided
solely under *Gonzales* and art 1, § 11. All references to *Jones* were
nothing more than dicta. In any event, to the extent that *Sims* can be
read as an adoption of *Jones* under art 1, § 11, we reject it in
accordance with the discussion in the first portion of this opinion.

appropriate to recognize viable old principles. We begin with the fundamental tenet that constitutional protections are personal. Only an individual who "belongs to the class for whose sake the constitutional protection is given" can seek to invoke its protection. *New York ex rel Hatch v Reardon, supra,* p 160. See *People v Warner, supra,* pp 203-210 (opinion of WILLIAMS, J.); *People v Norwood, supra,* p 272, and cases cited therein; *People v Oaks, supra,* p 255; *People v Joshua, supra,* p 585. See also *United States v Salvucci, supra,* p 86; *Rakas v Illinois, supra,* pp 133-134; *Brown v United States, supra,* p 230; *Alderman v United States, supra,* p 174; *Simmons v United States, supra,* p 389; *Jones v United States, supra,* p 261. In the context of art 1, § 11, this means that the rights guaranteed by that provision can only be asserted "at the instance of one whose own protection was infringed by the search and seizure." See *Simmons v United States, supra,* p 389. To establish standing to seek art 1, § 11-Am IV suppression, a defendant must show that he has a protectable interest under art 1, § 11.

This brings us to the critical question. What is the interest protectable under art 1, § 11?

The question is appropriately phrased in this manner, because it is clear that standing and the protectable search and seizure interest have been virtually synonymous. When the protectable interest was ownership of a home, standing was based on that ownership interest. When, with *Gonzales* and *Jones,* the protectable interest expanded from ownership, then the standing test was likewise expanded.

Of course, in *Rakas, supra,* p 139, the opinion goes so far as to indicate that the concept of standing should be abandoned altogether and that

we should use only the protectable interest test.
*Rakas* stated:

"we think the better analysis forthrightly focuses on
the extent of a particular defendant's rights under the
Fourth Amendment, rather than on any theoretically
separate, but invariably intertwined concept of stand-
ing."

Later, the *Rakas* opinion, p 140, talks of "dispens-
ing with the rubric of standing."

We need not here consider the utility of officially
dispensing with the term "standing," because this
time-honored tool will in all probability remain in
the vocabulary and lexicon of lawyers for a long
time. It is not an empty label. It is a working
concept.

So what is the present magnitude and quality of
defendant's right to protection under art 1, § 11?
The long and short of it is that this Court has
firmly enunciated and entrenched the definition of
the right against unreasonable search and seizure
in the test of "reasonable expectation of privacy."
As recently as December of 1983, in *People v
Nash, supra,* pp 204-215, we agreed that Fourth
Amendment interests were only "implicated when
the governmental activity infringed on a justifi-
able, or reasonable, expectation of privacy" and
that art 1, § 11 did not mandate a different stan-
dard. As long ago as April 1975, in *People v
Beavers, supra,* pp 562-566, this Court clearly em-
ployed the "reasonable expectation of privacy" test
in defining the scope of art 1, § 11 for purposes of
ascertaining whether participant monitoring was
within its ambit. In fact we relied on *Katz v
United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d
576 (1967), in reaching our conclusion.

As a consequence, both logic and experience

uphold the propriety of making the test for standing the "reasonable expectation of privacy" test. We now so establish it.

## VII. PARAMETERS OF THE "REASONABLE EXPECTATION OF PRIVACY" TEST

In adopting the "reasonable expectation of privacy" test to determine standing, it is obvious that the parameters of this test are not delimited by a fine line. It offers no exact template that can be mechanically imposed upon a set of facts to determine whether or not standing is warranted. It does, however, provide the normal common-law value of general direction and practical flexibility.

Justice Powell in his concurring opinion in *Rakas, supra,* pp 152-155, wrote a useful primer on the "reasonable expectation of privacy" test. We concur with the following remarks, and hold them applicable to art 1, § 11:

*"The ultimate question, therefore, is whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances.* As the dissenting opinion states, this standard 'will not provide law enforcement officials with a bright line between the protected and the unprotected.' See *post,* at 168. Whatever the application of this standard may lack in ready administration, it is * * * faithful to the purposes of the Fourth Amendment * * *.

"In considering the reasonableness of asserted privacy expectations, the Court has recognized that no single factor invariably will be determinative. Thus, the Court has examined whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy—that is, precautions customarily taken by those seeking privacy. See, *e.g., United States v Chadwick,* 433 US 1, 11; 97 S Ct 2476; 53 L Ed 2d 538 (1977). ('By placing personal effects inside a double-locked footlocker, respondents mani-

fested an expectation that the contents would remain free from public examination'); *Katz v United States, supra,* at 352 ('One who occupies [a telephone booth], shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world'). Similarly, the Court has looked to the way a person has used a location, to determine whether the Fourth Amendment should protect his expectations of privacy. In *Jones v United States, supra,* for example, the Court found that the defendant had a Fourth Amendment privacy interest in an apartment in which he had slept and in which he kept his clothing. The Court on occasion also has looked to history to discern whether certain types of government intrusion were perceived to be objectionable by the Framers of the Fourth Amendment. See *United States v Chadwick, supra,* at 7-9. And, as the Court states today, property rights reflect society's explicit recognition of a person's authority to act as he wishes in certain areas, and therefore should be considered in determining whether an individual's expectations of privacy are reasonable. See *Alderman v United States,* 394 US 165; 89 S Ct 961; 22 L Ed 2d 176 (1969)."

In *People v Nash, supra,* where we equated the protectable interest of the Fourth Amendment with the protectable interest of art 1, § 11, this Court expressed its agreement with the principles set forth in Justice Powell's concurring opinion in *Rakas.* We stated:

"An expectation of privacy is legitimate if the individual has an actual, subjective expectation of privacy and that actual expectation is one that society recognizes as reasonable. *United States v Knotts,* 460 US 276; 103 S Ct 1081; 75 L Ed 2d 55 (1983). Whether an expectation of privacy exists in both the subjective and the objective sense is determined by scrutinizing the totality of circumstances surrounding the alleged intrusion. *United States v Hawkins,* 681 F2d 1343 (CA 11, 1982). See *Rawlings [v Kentucky,* 448 US 98; 100 S Ct 2556; 65 L

Ed 2d 633 (1980)]; *Rakas, supra* (opinion of Powell, J.,
*concurring)." People v Nash, supra,* p 205.

In accordance with the foregoing, we wish to
emphasize that the expectation of privacy must be
one that society is prepared to recognize as reason-
able. In *Rakas, supra,* p 141, fn 9, the United
States Supreme Court disparaged the idea "that a
person present in a stolen automobile at the time
of a search may object to the lawfulness of the
search of the automobile." In a slightly different
vein, *Jones, supra,* p 267, referred to "those who,
by virtue of their wrongful presence, cannot in-
voke the privacy of the premises."

In sum, we hold that before a defendant may
attack the propriety of a search or seizure, that
search or seizure must have infringed upon an
interest of the defendant which art 1, § 11 was
designed to protect. In making this determination,
the court must decide whether the defendant had
an expectation of privacy in the object of the
search and seizure and whether that expectation is
one that society is prepared to recognize as reason-
able. The court should consider the totality of the
circumstances.

## VIII. CONCLUSION

Application of the foregoing principles to the
case before us is very difficult because of the
inadequacy of the record. The issue of standing
was first raised in the Court of Appeals. Neither
the prosecutor nor defense counsel argued the
standing issue in the trial court and only one
witness testified at the suppression hearing. As a
consequence, the trial judge made no factual find-
ings on the issue of standing.

In light of these circumstances, we deem it

appropriate to remand this case to the trial court for a new hearing on the issue of defendant's standing to challenge the seizure of the trailer in question.

The judgment of the Court of Appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.

RYAN, BRICKLEY, and BOYLE, JJ., concurred with WILLIAMS, C.J.

KAVANAGH, J. Defendant was charged in Detroit Recorder's Court with receiving stolen property, MCL 750.535; MSA 28.803, which consisted of a 45-foot aluminum trailer. Asserting an unconstitutional search and seizure, counsel for defendant moved to suppress evidence of the trailer. The trial court granted the motion, and the prosecution appealed, urging reversal on the grounds that defendant lacked standing to contest the search. The Court of Appeals affirmed.

We would affirm, and hold that any defendant against whom the state intends to offer evidence obtained in violation of Const 1963, art 1, § 11, has standing to challenge its introduction.

Police officers, while investigating the sale of stolen vehicle transmissions shipped in tractor-trailer rigs, happened upon such rigs parked in the lot of a restaurant in Detroit. One of the trailers was seized, without a warrant, and towed to a police compound in Romulus where, the next day, it was examined for a hidden vehicle identification number.

In response to defendant's motion in the trial court to suppress the evidence obtained by the search and seizure without a warrant, the prosecutor contended that various exceptions to the warrant requirement justified the police conduct.

On appeal from the trial court's order suppressing the evidence, the prosecution challenged, for the first time, defendant's standing to contest the search and seizure. Recognizing that the automatic standing rule of *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960), for cases like the present one, had been overruled by *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980), the Court of Appeals nonetheless concluded that it "is still applicable in Michigan as it provides greater protection to the citizens of this state from unreasonable searches and seizures." *People v Smith,* 118 Mich App 366, 374; 325 NW2d 429 (1982). The Court finally concluded that the seizure was unlawful and that the evidence was correctly suppressed.

In this Court, the prosecution pursues its challenge to defendant's standing. We are urged to follow the United States Supreme Court in *Salvucci* and reject the rule of *Jones* that automatically confers standing on a defendant charged with a crime which includes possession as an essential element. In place of that rule a defendant must establish that he was a victim of an invasion of privacy because Fourth Amendment rights are personal and may not be asserted vicariously. A defendant has standing to challenge a search and seizure, the prosecution contends, only if he can demonstrate an invasion of a reasonable expectation of privacy in the property seized or the place searched.

The United States Supreme Court's interpretation of the Fourth Amendment, upon which the prosecution bases its argument, confers standing only upon those whose subjective expectation of privacy has been invaded, see *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), and *Rawlings v Kentucky,* 448 US 98; 100 S Ct 2556;

65 L Ed 2d 633 (1980). But this would understate
the breadth of Michigan's constitutional safeguard.
What the Court in *Katz v United States,* 389 US
347, 350; 88 S Ct 507; 19 L Ed 2d 576 (1967), said
about the Fourth Amendment applies with equal
force to our own art 1, § 11: "the Fourth Amend-
ment cannot be translated into a general constitu-
tional 'right to privacy.' That Amendment protects
individual privacy against certain kinds of govern-
mental intrusion, but *its protections go further,
and often have nothing to do with privacy at all."*
(Emphasis added.) Art 1, § 11 of the Michigan
Constitution protects the *"person, houses, papers
and possessions of every person."* (Emphasis
added.) Not only is privacy in a place protected,
but so are persons, houses, papers, and possessions
protected from unreasonable searches and sei-
zures.

We do not believe that only those defendants
whose own privacy has been invaded by govern-
ment officials may challenge the introduction of
evidence unlawfully seized. Art 1, § 11 states that
"[t]he person, houses, papers and possessions of
*every* person shall be secure from unreasonable
searches and seizures." (Emphasis added.) This
section operates as a general injunction against
the government, prohibiting its agents from con-
ducting unreasonable searches and seizures. If a
search and seizure contravenes this section, the
resulting evidence has been acquired unlawfully,
regardless of whether it is offered in evidence
against one whose own subjective expectation of
privacy has not been invaded by the search and
seizure. Such tainted evidence may not be admit-
ted in court.

The rule which excludes evidence obtained in
contravention of art 1, § 11 likewise does not de-
pend for its efficacy upon the particular defendant

against whom such evidence is proffered. The evidence is excluded to enforce a constitutional safeguard. The government may not prosecute an individual with evidence it has obtained unlawfully because the government is not above the law. The integrity of the judiciary forbids the courts from participating in, and thereby condoning, unlawful conduct by officials.

All of these reasons underlying the exclusionary rule apply whenever the state seeks to admit evidence obtained in violation of art 1, § 11. That safeguard always prohibits unreasonable searches and seizures. Any criminal defendant, therefore, has standing to challenge the introduction of evidence allegedly obtained through an unlawful search and seizure. And if it was so obtained, it is inadmissible regardless of whether it was obtained in violation of the challenging defendant's rights. This view renders it unnecessary to address the prosecutor's challenge to the automatic standing rule of *Jones, supra.*

The prosecution argues that, even if defendant has standing, the seizure of the trailer and subsequent search for its identifying number were lawful acts and that the evidence should not have been suppressed. The argument asserts that because the trial court found that there was probable cause to believe the trailer was evidence of a crime and because it stood in an open parking lot no warrant was needed to seize it.

We recognize that the Court of Appeals stated that the trial court had so found, 118 Mich App 376, but our own reading of the trial court's opinion reveals that the court did not find that the investigating officers had probable cause to believe the trailer was evidence of a crime. The trial court said:

"At the time of the seizure of the trailer, the officers had, at best, some suspicions that the vehicle was involved in a theft-related offense." *People v Smith,* unpublished opinion of the Recorder's Court of Detroit, decided April 3, 1980 (Docket No. 79-08198).

We are not persuaded to disturb this finding. At the very least, in order for a seizure of private property without a warrant to be considered reasonable under art 1, § 11, there must be probable cause to believe it is evidence of a crime. See *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971), *cert den* 405 US 965; 92 S Ct 1169; 31 L Ed 2d 240 (1972).

We are in accord with the trial court's observation that:

"The plain view exception does not authorize police officers to seize everything in sight, only those items which the officer has probable cause to believe are evidence of crime. * * * The plain view exception is inapplicable to the facts at hand since the officers had conceded that the purpose of the impounding was to determine the true identity of the vehicle, not because the vehicle was thought to contain contraband or to be a stolen vehicle."

We would affirm.

LEVIN, J., concurred with KAVANAGH, J.

LEVIN, J. The defendant, Lee Brady Smith, is charged with receiving or concealing a stolen motor vehicle.[1] The question is whether he should be accorded automatic standing to contest the seizure. We would hold that he has automatic standing to contest the seizure.

[1] MCL 750.535; MSA 28.803.

## I

When the police seized the stolen vehicle, it was located on a vacant lot in Detroit. A search warrant had not been obtained. Nor was there probable cause to believe that the vehicle was stolen when it was seized.[2]

Smith moved to suppress evidence of the trailer on the ground that it was illegally seized. The Recorder's Court granted the motion. The Court of Appeals rejected the argument that Smith lacked standing to challenge the seizure and held that he had automatic standing to challenge the seizure under Const 1963, art 1, § 11, and that the police should have obtained a warrant before they seized the trailer.[3] We would affirm the judgment of the Court of Appeals.

## II

The United States Supreme Court developed the standing requirement as a limitation on the exclusionary rule.[4] Absent a standing limitation, a de-

[2] The facts are set forth more fully in the opinion of the Court, *ante,* pp 8–11.

[3] *People v Smith,* 118 Mich App 366; 325 NW2d 429 (1982), *lv gtd* 414 Mich 876 (1982).

[4] Two separate exclusionary rules are applicable in this state: the federal exclusionary rule, and the Michigan exclusionary rule. The former was first announced in *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914). The latter is the rule developed under Const 1908, art 2, § 10, and first announced in *People v Marxhausen,* 204 Mich 559; 171 NW 557; 3 ALR 1505 (1919).

From 1919 until *People v Pennington,* 383 Mich 611; 178 NW2d 471 (1970), was decided, the scope of the Michigan exclusionary rule was limited solely by the Michigan Constitution as construed by Michigan courts. In *Pennington,* this Court recognized that *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), which mandated application of the Fourth Amendment and the federal exclusionary rule by state courts in cases in which evidence was obtained by state officers established the principle that the federal standard establishes minimum protection. Michigan courts may provide greater protection than is afforded by the federal exclusionary rule, but they may not provide less protection.

fendant could object to the admission of evidence whether or not he had a possessory or proprietary interest in the evidence seized or the premises searched. Imposition of a standing requirement has been justified on the basis that the right to protection from unreasonable search and seizure is a personal right that may not be asserted vicariously.[5]

Standing was at first accorded only those defendants who had a property right in the premises searched or the evidence seized. That rule came to be known as the "trespass doctrine"[6] and depended

[5] See *Rawlings v Kentucky,* 448 US 98; 100 S Ct 2556; 65 L Ed 2d 633 (1980); *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980); *Rakas v Illinois,* 439 US 128, 133-134; 99 S Ct 421; 58 L Ed 2d 387 (1978); *Brown v United States,* 411 US 223, 230; 93 S Ct 1565; 36 L Ed 2d 208 (1973); *Alderman v United States,* 394 US 165, 174; 89 S Ct 961; 22 L Ed 2d 176 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted").

[6] *Commonwealth v Sell,* 504 Pa 46, 51; 470 A2d 457, 460 (1983). See also Dutile, *Some Observations on the Supreme Court's Use of Property Concepts in Resolving Fourth Amendment Problems,* 21 Cath U L Rev 1, 4-10 (1971); White & Greenspan, *Standing to Object to Search and Seizure,* 118 U Pa L Rev 333, 338 (1970); Note, *Standing up for Fourth Amendment Rights: Salvucci, Rawlings, and the Reasonable Expectation of Privacy,* 31 Case W Res L Rev 656, 660 (1981). See generally Hall, Search and Seizure, § 2.2; Edwards, *Standing to Suppress Unreasonably Seized Evidence,* 47 N W L Rev 471 (1952).

The "trespass doctrine" was not applied consistently by the courts. See *Coon v United States,* 36 F2d 164 (CA 10, 1929), and *United States v Stappenback,* 61 F2d 955 (CA 2, 1932). In *Coon,* the court denied the defendant standing to object to the search of a building that he was using as a temporary residence. His occupancy of the building was merely "incident" to the primary use to which he put the building, manufacturing whiskey illegally. Therefore, Fourth Amendment rights could not be asserted because the building was not his "house." 36 F2d 165.

In *Stappenback,* on the other hand, the court ruled that one of the defendants had standing to object to the search and seizure of papers found in a pocket of his coat. Although the defendant was not present during the search and did not have an interest in the premises searched, he had standing to object because he was in constructive possession of the coat during his absence. 61 F2d 957.

The "trespass doctrine" was followed by the "constitutionally protected areas" test. Note, *Standing Up for Fourth Amendment Rights, supra,* p 662. "This test recognized that certain areas presumptively

on the strength of the defendant's possessory interest in the property seized or searched. The trespass doctrine thus depended on common-law property concepts.[7]

The trespass doctrine posed a dilemma for defendants charged with crimes in which an essential element was possession of the property seized. A motion to suppress required proof that the defendant had an interest in the property seized; however, testimony that showed his interest in the property could be used by the prosecution at his subsequent trial.[8] The defendant was called upon to surrender his right against self-incrimination to assert his right to be free from unreasonable

---

were protected from government intrusion unless the plain view doctrine applied." *Id.* This test in turn lost favor in *Katz;* however, it, seemingly, has returned, in modified form, as the "reasonable expectation of privacy" test.

[7] See *Jones v United States,* 362 US 257, 265-266; 80 S Ct 725; 4 L Ed 2d 697; 78 ALR2d 233 (1960):

"They have denied standing to 'guests' and 'invitees' *(e.g., Gaskins v United States,* 95 US App DC 34, 35; 218 F2d 47, 48 [1955]; *Gibson v United States,* 80 US App DC 81, 84; 149 F2d 381, 384 [1945]; *In re Nassetta,* 125 F2d 924 [CA 2, 1942]; *Jones v United States,* 104 US App DC 345; 262 F2d 234 [1959]), and employees, who though in 'control' or 'occupancy' lacked 'possession' *(e.g., Connolly v Medalie,* 58 F2d 629, 630 [CA 2, 1932]; *United States v Conoscente,* 63 F2d 811 [CA 2, 1933]). The necessary quantum of interest has been distinguished as being, variously, 'ownership in or right to possession of the premises' *(e.g., Jeffers v United States,* 88 US App DC 58, 61; 187 F2d 498, 501 [1951], *affirmed, Jeffers v United States,* 342 US 48 [72 S Ct 93; 96 L Ed 59 (1951)]), the interest of a 'lessee or licensee' *(United States v De Bousi,* 32 F2d 902 [D Mass, 1929]), or of one with 'dominion' *(McMillan v United States,* 26 F2d 58, 60 [CA 8, 1928]; *Steeber v United States,* 198 F2d 615, 617 [33 ALR2d 1425 (CA 10, 1952)])."
See also Dutile, fn 6 *supra;* White & Greenspan, fn 6 *supra.*

[8] Judge Learned Hand stated the defendant's dilemma in *Connolly v Medalie,* 58 F2d 629, 630 (CA 2, 1932):

"Men may wince that admitting that they were the owners, or in possession of contraband property; may wish at once to secure the remedies of the possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma."

searches and seizures or his latter right to retain his former right.

The United States Supreme Court resolved the dilemma in *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697; 78 ALR2d 233 (1960). The Court held that when a defendant is charged with a crime an essential element of which is possession of the item seized, he has automatic standing to object to a search or seizure.[9] The Court reasoned that to reach a contrary conclusion would permit the government to benefit from the contradictory positions of asserting that the defendant had an interest sufficient to be charged with possession, but insufficient to have standing to object to the search or seizure.[10] This became known as the

---

[9] In *Jones,* fn 7 *supra,* the defendant was "legitimately on the premises" of an apartment owned by a friend that was searched by government agents resulting in seizure of drugs and charging the defendant with possession of narcotics. The lower courts denied the defendant standing to object to the search because he was an invitee, which was an insufficient property interest to provide standing under the trespass doctrine. The Supreme Court said:

"Since narcotic charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At least, such a defendant has been placed in a criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, although that they may is by no means an inevitable holding, but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession." 362 US 261-262.

[10] See *Jones,* fn 7 *supra,* pp 263-264:

"Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which a conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be

"automatic standing" rule.[11] The Court added that when a defendant proved that he was legitimately on the premises of the place searched he had standing to object to use of evidence seized during the search.

The Court subsequently abandoned the rules announced in *Jones* and substituted a requirement that the accused be able to assert a reasonable expectation of privacy in the premises searched. The concept of a reasonable expectation of privacy, developed in *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), extended the reach of the Fourth Amendment to provide greater protection of individual constitutional rights than had been accorded under prior decisions. The concept of a "reasonable expectation of privacy" was first articulated in Justice Harlan's concurring opinion in *Katz* in which he suggested that the protection of the Fourth Amendment extended to all searches of areas in which one has such an expectation.[12]

Justice Harlan, speaking for the Court, subsequently relied on "reasonable expectation of privacy" in *Mancusi v DeForte,* 392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968). The Court held that

and was convicted suffices to give him standing under any fair and rational conception."

[11] See *Rakas,* fn 5 *supra; Salvucci,* fn 5 *supra; United States v Moody,* 485 F2d 531, 533, fn 3 (CA 3, 1973). See also Hall, fn 6 *supra,* § 21.6, p 611; 1 LaFave & Israel, Criminal Procedure, § 9.2(a); 3 LaFave, Search and Seizure, § 11.3.

[12] See *Katz v United States,* 389 US 347, 361; 88 S Ct 507; 19 L Ed 2d 576 (1967) (Harlan, J., *concurring):*

"As the Court's opinion states, 'the Fourth Amendment protects people, not places.' The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a 'place.' My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first, that a person have exhibited an actual (subjective) expectation of privacy and, second, that *the expectation be one that society is prepared to recognize as 'reasonable.'* " (Emphasis added.)

the defendant had standing to object to the search of an office that he shared with others and the seizure of papers from that office. Both *Jones* and *Katz* were cited with approval in the Court's opinion thereby indicating that the reasonable expectation of privacy formulation was thought to be consistent with the *Jones* test.

The "legitimately on the premises" test came under attack in *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978). The Court concluded that substantive Fourth Amendment doctrine subsumed the *Jones* standing requirements and rejected the "legitimately on the premises" test as a measure of those rights. Absent a showing that one has a reasonable expectation of privacy in the premises searched, the defendant lacks standing to object to the search.[13] Justice White argued, in his dissent, that the Court's new test was inconsistent with the purpose of the Fourth Amendment.[14]

Automatic standing was abandoned in *United States v Salvucci,* 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980). The Court declared that *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968), had resolved the dilemma addressed in *Jones.* In *Simmons,* the Court had held that testimony given by a defendant during a suppression hearing could not be used by the government to prove the essential elements of the

[13] See *Sell,* fn 6 *supra,* p 60; Note, *Standing Up for Fourth Amendment Rights,* fn 6 *supra,* pp 671-672.

[14] See *Rakas,* fn 5 *supra,* pp 167-168 (White, J., *dissenting):*

"The distinctions the court would draw are based on relationships between private parties, but the Fourth Amendment is concerned with the relationship of one of those parties to the government."

Justice White also said:

"Insofar as passengers are concerned, the Court's opinion today declares an 'open season' on automobiles. However unlawful stopping and searching a car may be, absent a possessory or ownership interest, no 'mere' passenger may object, regardless of his relationship to the owner." 439 US 157 (White, J., *dissenting).*

crime with which the defendant was charged. In *Salvucci,* the Court said that the rule announced in *Simmons* eliminated the major justification for the automatic standing rule. The *Salvucci* Court held that "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." 448 US 85. The test then became, whether "the defendant * * * had an expectation of privacy in the area searched." *Id.,* p 93. A defendant who had a possessory interest in the item seized or a defendant who was charged with a crime involving the element of possession was no longer automatically accorded standing to object to the search and seizure.[15]

Although earlier in the term in which *Salvucci* was decided the Court had ruled that illegally obtained evidence may be used for impeachment purposes,[16] it failed to note that evidence offered at a suppression hearing *might* be used to impeach the defendant should he take the stand during

[15] *Rawlings,* fn 5 *supra,* decided the same day, further refined the *Rakas* standard. In *Rawlings,* the Court applied a "totality of the circumstances" test in rejecting a Fourth Amendment claim. The defendant in *Rawlings* was charged with possession of narcotics with intent to distribute. Although he admitted ownership of the drugs, such ownership was insufficient, in the Court's view, to provide him with standing to object to the search and seizure because the police seized the drugs from another person in the defendant's company. The Court took this opportunity to contrast the nature of the appropriate judicial inquiry before and after *Rakas:*

"Had petitioner placed his drugs in plain view, he would still have owned them, but he could not claim any legitimate expectation of privacy. Prior to *Rakas,* petitioner might have been given 'standing' in such a case to challenge a 'search' that netted those drugs but probably would have lost his claim on the merits. After *Rakas,* the two inquiries merge into one: whether governmental officials violated any legitimate expectation of privacy held by petitioner." *Id.,* p 106.

[16] See *United States v Havens,* 446 US 620; 100 S Ct 1912; 64 L Ed 2d 559 (1980).

This was Justice Marshall's foremost concern in his dissent in *Salvucci* and has been echoed by state supreme courts that have retained the "automatic standing" doctrine. For a discussion of these state court decisions, see text accompanying fns 21-27.

trial. While the trial court will instruct the jury
that testimony offered to impeach a defendant
may not be used in considering his guilt, the jury
will find it difficult to distinguish between evidence
offered by the prosecution to prove its case and
testimony offered to impeach the defendant once
he takes the stand.[17] *Simmons* thus failed to elimi-
nate the dilemma sought to be resolved by the
automatic standing rule.[18]

When evidence obtained in a search is offered
against more than one person, there may be differ-
ent decisions on their motions to suppress, under
the *Salvucci* rule. While all the defendants might
be "legitimately on the premises," charged with a
possessory offense, and have an interest in the
evidence seized, one may be found to have a "rea-
sonable expectation of privacy" and others may be
found to have no such expectation. This has been
called the " 'lightning rod' theory of standing."
*United States v Baskes,* 433 F Supp 799, 804, fn 6
(ND Ill, 1977), *aff'd* 687 F2d 165 (CA 7, 1981).[19] The
theory is so termed because one defendant obtains
the benefit of the constitutional protection and the
others do not.

The "reasonable expectation of privacy" test is
no more consistently applied by the courts than
the "trespass doctrine" was applied. A significant
deficiency inherent in the "reasonable expectation
of privacy" test, evidenced in *Rakas,* is that the

[17] See Note, *Standing Up for Fourth Amendment Rights: Salvucci,*
fn 6 *supra,* p 683 ("There is no question that even after *Rawlings,*
possession will be an important factor in determining standing for
fourth amendment claims").

[18] This Court has not decided as a matter of Michigan law, however,
whether evidence offered by the defendant at a suppression hearing
tending to show his possession of the property may be used to
impeach his testimony at the trial. See *People v Reed,* 393 Mich 342;
224 NW2d 867 (1975), *cert den* 422 US 1044, 1048 (1975).

[19] For an example of this theory in practice, see *Gahan v State,* 290
Md 310, 313; 430 A2d 49 (1981).

courts tend to look to their own intuitions to determine whether one should be accorded an expectation of privacy in a particular area. It has been observed that *"Katz * * ** offers neither a comprehensive test of fourth amendment coverage nor any positive principles by which questions of coverage can be resolved. * * * In the end, the basis of the *Katz* decision seems to be that the fourth amendment protects those interests that may justifiably claim fourth amendment protection." Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn L Rev 349, 385 (1974).[20]

A survey of decisions applying the reasonable expectation of privacy test shows inconsistent application.[21]

---

[20] One commentator has on this basis criticized this approach:

"In its present formulation, fourth amendment doctrine hardly constitutes a bulwark against unwarranted governmental intrusion. Relying on privacy expectations alone requires a court to pinpoint a vague, shifting, and perhaps illusory consensus. Use of the standard has produced 'confused and unprincipled judicial decisions.' * * * One can only wonder if constitutional guarantees should hinge on such trivial considerations as the tightness with which a container is sealed.

"The emphasis on subjective expectations poses a further serious threat to the vitality of the fourth amendment. Repeated invasions by credit bureaus, employers, and the like can lead persons to discount most expectations as unreasonable; individual fears of a loss of privacy then become self-fulfilling prophecies. In particular, the government can through its actions redefine popular expectations so as to undermine constitutional rights." The Supreme Court: 1979 Term, 94 Harv L Rev 1, 202-203 (1980).

[21] A "reasonable expectation of privacy" was found in *United States v Weber,* 668 F2d 552, 561-562 (CA 1, 1981), *cert den* 457 US 1105 (1982) (privacy interest in an object tied up in a rain slicker, but not when the item is lying under a rain slicker on the ground); *United States v Van Dyke,* 643 F2d 992, 994-995 (CA 4, 1981) (privacy interest in a rural house being observed from a honeysuckle patch that is 150 feet away from the house); *United States v Dien,* 609 F2d 1038, 1044-1045 (CA 2, 1979), adhered to in 615 F2d 10, 11 (CA 2, 1980) (privacy interest in taped cardboard boxes found in a van); *United States v Meier,* 602 F2d 253, 255 (CA 10, 1979) (privacy interest in closed, but unlocked backpack); *United States v Schleis,* 582 F2d 1166, 1172 (CA 8, 1978) (privacy interest in briefcase that was seized incident to defendant's arrest); *United States v Holmes,* 521

## III

The concept that the constitutional proscription of unreasonable search and seizure protects property rights as well as privacy rights is consistent with *Katz. Katz* extended Fourth Amendment rights to include privacy rights. It did not abrogate previous doctrine that the Fourth Amendment protected property rights.[22] This reading of prior decisions and of the constitutional protections has

F2d 859, 869-870 (CA 5, 1975) (privacy interest in a shed near a rural farm house). On the other hand, a "reasonable expectation of privacy" was not found in *United States v Hargrove,* 647 F2d 411, 413 (CA 4, 1981) (no privacy interest in automobile driven by defendant, but not owned by him, or in paper bag found in the automobile); *United States v Ramapuram,* 632 F2d 1149, 1155-1156 (CA 4, 1980), *cert den* 450 US 1030 (1981) (no privacy interest in the trunk of a junked automobile in the defendant's farm field); *United States v Neumann,* 585 F2d 355, 360-361 (CA 8, 1978) (no privacy interest in closed department store box located inside passenger compartment of an automobile); *United States v Gaultney,* 581 F2d 1137, 1141 (CA 5, 1978), *cert den* 446 US 907 (1980) (no privacy interest in a taped Scrabble box); *United States v Cruz Pagan,* 537 F2d 554, 557-558 (CA 1, 1976) (no privacy interest in material stored in a condominium garage); *State v Schrier,* 283 NW2d 338, 346 (Iowa, 1979) (no privacy interest in unlatched knapsack).

[22] See *Rawlings,* fn 5 *supra,* pp 117-118 (Marshall, J., *dissenting):*

"[The decision] is wrong because it is contrary to the Fourth Amendment, which guarantees that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, should not be violated.' The Court's reading of the Amendment is far too narrow. The Court misreads the guarantee of security 'in their persons, houses, papers, and effects, *against* unreasonable searches and seizures' to afford protection only against unreasonable searches and seizures *of* persons and places.

"The Fourth Amendment, it seems to me, provides in plain language that if one's security in one's 'effects' is disturbed by an unreasonable search and seizure, one has been the victim of a constitutional violation; and so it has always been understood. Therefore the Court's insistence that in order to challenge the legality of the search one must also assert a protected interest in the premises is misplaced. The interest in the item seized is quite enough to establish that the defendant's personal Fourth Amendment rights have been invaded by the government's conduct.

\*   \*   \*

"When the government seizes a person's property, it interferes with his constitutionally protected right to be secure in his effects. That

served as the basis of a number of state supreme court decisions that have retained the automatic standing rule. A state may recognize greater restrictions on search and seizure under its constitution than have been recognized under the United States Constitution.[23]

The New Jersey Supreme Court construed the term "effects" in the New Jersey Constitution[24] to confer standing on the defendant when he was the owner of, or had a possessory interest in, personal property seized by law enforcement officers. *State v Alston*, 88 NJ 211, 227; 440 A2d 1311 (1981). The court said "that the constitutional protection against unreasonable searches and seizures extends to people's 'effects' as well as to their 'persons' and 'houses' * * *."

The Supreme Court of Washington reaffirmed the "automatic standing" rule under the Washington Constitution. *State v Simpson*, 95 Wash 2d 170; 622 P2d 1199 (1980). The rationale was twofold: a construction of the Washington Constitution,[25] and a concern that the right against self-

interference gives him the right to challenge the reasonableness of the government's conduct, including the seizure. If the defendant's property was seized as the result of an unreasonable search, the seizure cannot be other than unreasonable." (Emphasis in the original.)

[23] See *Oregon v Hass*, 420 US 714, 719; 95 S Ct 1215; 43 L Ed 2d 570 (1975); *Sibron v New York*, 392 US 40, 60-61; 88 S Ct 1889; 20 L Ed 2d 917 (1968); *Cooper v California*, 386 US 58, 62; 87 S Ct 788; 17 L Ed 2d 730 (1967); *PruneYard Shopping Center v Robins*, 447 US 74; 100 S Ct 2035; 64 L Ed 2d 741 (1980); *Cologne v Westfarms Associates*, 192 Conn 48; 469 A2d 1201 (1984); *People v Beavers*, 393 Mich 554; 227 NW2d 511 (1975), *cert den* 423 US 878 (1975); *State ex rel Oregonian Publishing Co v Deiz*, 289 Or 277; 613 P2d 23 (1980); *State ex rel Herald Mail Co v Hamilton*, 267 SE2d 544 (W Va, 1980).

See also *Developments in the Law—The Interpretation of State Constitutional Rights*, 95 Harv L Rev 1324, 1368 (1982); Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv L Rev 489, 491 (1977).

[24] NJ Const, art 1, ¶ 7.

[25] Wash Const, art 1, § 7.

incrimination was inadequately protected by the rule announced in *Simmons*.[26]

In *State v Settle,* 122 NH 214; 447 A2d 1284 (1982), the Supreme Court of New Hampshire retained the automatic standing rule for possessory crimes pursuant to the New Hampshire constitutional provision regulating searches and seizures, which, like Michigan's constitutional provision,[27] protects "possessions" from unreasonable

[26] A commentator has observed:

"Recent Supreme Court decisions * * * indicate that suppression hearing testimony eventually may be admissible for impeachment purposes. In *United States v Havens,* [446 US 620; 100 S Ct 1912; 64 L Ed 2d 559 (1980),] the Court permitted the use of illegally seized evidence, which had been successfully suppressed, to impeach the defendant's testimony given in answer to a question on cross-examination. In reaching its decision, the Court in *Havens* relied heavily on *Harris v New York* [401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971)]. Although *Harris* concerned the use of a defendant's statements obtained in violation of the fifth amendment for impeachment purposes, the Court found its reasoning sufficiently analogous to be applicable in *Havens.* The Court in *Havens* reasoned that 'arriving at the truth is a fundamental goal of our legal system.' Consonant with this goal, when a defendant takes the witness stand on his or her own behalf, he or she is obligated to testify truthfully or risk a perjury prosecution. As the *Harris* Court stated, 'a defendant ought not to be allowed to perjure himself, while *relying* on the exclusionary rule to keep out evidence proving his lack of credibility.' Furthermore, in *United States v Kahan,* [415 US 239; 94 S Ct 1179; 39 L Ed 2d 297 (1974),] a case involving sixth amendment issues, the Court specifically concluded that '*Simmons* is not to be converted into a license for false representations * * * free from the risk that the claimant will be held accountable for his falsehood.'" Note, *Standing Up for Fourth Amendment Rights,* fn 6 *supra,* pp 680-681.

[27] In *State v Settle,* the court said the term "possessions" protects all articles in one's possession without regard to whether he is the owner of those articles; on the other hand, the word "effects" seemingly protects those articles that are owned by the person against whom the evidence is sought to be offered. The court also said that a strong argument could be made for the rule of automatic standing on the basis that it provides a bright line "for the benefit of law enforcement, the trial courts, and the trial bar [in identifying] that class of persons who may assert rights against unlawful searches and seizures." The court said that the appellate courts in the federal system had been required under the reasonable expectation of privacy test to draw fine line distinctions that are not altogether logical, see cases cited *id.,* p 219.

Const 1963, art 1, § 11, like the New Hampshire Constitution,

searches and seizures. The court concluded that the word "possessions" provides a greater degree of protection of individual rights than is provided by the Fourth Amendment which protects only "effects."

The Supreme Court of Pennsylvania also retained the "automatic standing" doctrine pursuant to the Pennsylvania Constitution. *Commonwealth v Sell,* 504 Pa 46; 470 A2d 457 (1983). The court concluded that the charge of a possessory offense is sufficient to establish standing and declined to adopt the "amorphous 'legitimate expectation of privacy' standard." *Id.,* pp 66-68.

The rule announced in *Simmons* inadequately protects a person's right against self-incrimination guaranteed by Const 1963, art 1, § 17. This Court should recognize that a person charged with a possessory offense has "automatic standing" under Const 1963, art 1, § 11, and that Smith has the right to object to an illegal seizure and subsequent search of the trailer, possession of which is an element of the offense with which he is charged.

### IV

The Court of Appeals held that the only warrant exception that might be applicable is the "plain view" doctrine. It held that the plain view doctrine was inapplicable because the seizure failed to meet the requirements set forth in *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971). We agree.

There are three requirements that must be met to validate a seizure under the plain view doctrine.

protects "possessions." "The person, houses, papers, and *possessions* of every person shall be secure from unreasonable searches and seizures." (Emphasis added.) The Fourth Amendment provides that "the people be secure in their persons, houses, papers and *effects.*" (Emphasis added.)

They are: the law enforcement officers must be validly on the premises, the discovery of the item must be inadvertent,[28] and it must be immediately apparent that the item is incriminating evidence.

The third requirement was not met here. This requirement is not satisfied unless the property appears to be incriminating without prying or a search of any kind. *Commonwealth v Bowers,* 217 Pa Super 317; 274 A2d 546 (1970),[29] and *State v Murray,* 84 Wash 2d 527; 527 P2d 1303 (1974), *cert den* 421 US 1004 (1975).[30]

The seizure of the trailer occurred before the police located the VIN and checked it against the stolen vehicle lists. The police had subjected the vehicle to thorough searches to locate the hidden VIN plate and had been unable to locate it. After

[28] The first two requirements were developed in an attempt to preclude a search for specific items being turned into a general exploratory search.

[29] In *Commonwealth v Bowers,* the police were executing a search warrant in the defendant's home. One of the officers noticed a television set he believed might be stolen. In an effort to confirm his suspicions, he picked the set up to compare the set's serial number with the serial number of the missing set that appeared on a list he was carrying with him. The officer, however, was unable to locate the serial number on the set. He obtained the services of a local repairman who removed the back of the set and revealed the serial number. The serial number matched that of the missing set, and the set was seized. The court rejected the prosecution's claim that the search and seizure was valid within the plain view doctrine.

[30] In *State v Murray,* the police conducted a warrantless search of the apartment of Linda Simpson; the police contended that she consented to the search. They were searching for "office and video equipment, such as typewriters, calculators, etc." They failed to find the equipment. During the search, one of the officers noticed a Sony television set, which he had a "suspicion" was stolen; he tipped it up from its resting place to record its serial number and left. It was learned that the set was stolen. A search warrant describing the set was issued, and it was seized.

The Court of Appeals and the Supreme Court of Washington rejected the prosecution's claim that the "plain view" doctrine validated the seizure. It was not immediately apparent that the television set was incriminating evidence. The courts apparently viewed the acts of observing and recording the serial number and the physical taking of the television set as illegal seizures.

the seizure, a special unit was notified and conducted the search to locate the VIN plate. The need for such efforts shows that it was not immediately apparent that the trailer was stolen.

## V

The "automatic standing" doctrine first announced in *Jones* is embodied in Const 1963, art 1, § 11, for crimes in which possession is an essential element. Because Smith was charged with a possessory offense, he has standing to object to the admission of evidence of seizure of the trailer. The warrantless seizure of the trailer failed to satisfy the requirements of the "plain view" doctrine set forth in *Coolidge v New Hampshire, supra,* and the evidence should be suppressed.

## VI

The standing doctrine developed by the United States Supreme Court as a limitation on the exclusionary rule has a questionable doctrinal basis.[31]

[31] See Note, *Standing Up for Fourth Amendment Rights,* fn 6 *supra,* pp 657, 660. This commentator observed that establishing standing to object to Fourth Amendment violations is more difficult than establishing standing generally. Generally, one has standing to sue when he has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v Carr,* 369 US 186, 204; 82 S Ct 691; 7 L Ed 2d 663 (1962). See also *Flast v Cohen,* 392 US 83, 95; 88 S Ct 1942; 20 L Ed 2d 947 (1968); *Doremus v Hawthorne Bd of Ed,* 342 US 429, 432-435; 72 S Ct 394; 96 L Ed 475 (1952).

In Fourth Amendment cases, however, standing has been determined by a number of tests and accorded, at one time or another, to persons having a property interest in the premises searched or the items seized, known as the "trespass doctrine," see authorities cited in fn 6; persons who are within a "constitutionally protected area", see Scoular, *Wiretapping and Eavesdropping: Constitutional Development From Olmstead to Katz,* 12 St Louis U L J 513, 516, 523-526 (1968); persons who are "legitimately on the premises" of the place searched or who are charged with a possessory offense, see text accompanying

Ordinarily any person who is significantly affected adversely by governmental action may assert that the governmental action is violative of a constitutional limitation.[32] Requiring a person who is the object of governmental action to show more than that he is so adversely affected by the asserted constitutional violation, appears to be inconsistent with traditional standing doctrine.[33] To impose greater restrictions on the assertion of constitutional limitations designed to protect personal liberty is questionable. We should reconsider the legitimacy of the standing doctrine. See *Alderman v United States,* 394 US 165, 200-211; 89 S Ct 961; 22 L Ed 2d 176 (1969) (Fortas, J., *concurring in part and dissenting in part); People v Martin,* 45 Cal 2d 755; 290 P2d 855 (1955). The constitution proscribes unreasonable searches and seizures and

fns 9-11; and persons who have a "reasonable expectation of privacy," the current test, see cases cited fn 19.

If general standing requirements were applicable in search and seizure cases, any defendant against whom the prosecution offered the evidence would have standing to object to the search and seizure because subjecting him to prosecution for an offense at which the evidence alleged to have been illegally obtained might be offered would satisfy the personal stake requirement. 1 LaFave & Israel, Criminal Procedure, § 9.1(a), p 714. A number of commentators have called for revision of the standing doctrine to require no more than a showing that a person has been charged with an offense and the evidence sought to be suppressed may be used at his trial. See Landynski, Search and Seizure and the Supreme Court, pp 73-77; Grove, *Suppression of Illegally Obtained Evidence: The Standing Requirement on Its Last Leg,* 18 Cath U L Rev 150 (1968); Traynor, *Mapp v Ohio at Large in the Fifty States,* 1962 Duke L J 319, 335; Comment, *Standing to Object to an Unreasonable Search and Seizure,* 34 U Chi L Rev 342, 365 (1967); Note, *Search and Seizure: Admissibility of Illegally Acquired Evidence Against Third Parties,* 66 Colum L Rev 400 (1966).

[32] See fn 31. See also Nowak, Young & Rotunda, Constitutional Law (2d ed), p 81: "For personal standing the plaintiff must establish * * * a 'personal stake' in the outcome. This stake requires a two-fold showing: first, a 'distinct and palpable injury' to the plaintiff, and, second, a ' "fairly traceable" causal connection between the claimed injury and the challenged conduct.' "

[33] See fn 31.

does not state or incorporate a standing requirement based on expectation of privacy.

In the instant case, because Smith is charged with a possessory offense, decision does not require that we do more than recognize that the concept of "automatic standing" is embodied in Const 1963, art 1, § 11.

We would affirm the judgment of the Court of Appeals.

CAVANAGH, J., concurred with LEVIN, J.