*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. S. KNIPP, Minor.

FOR PUBLICATION
May 23, 2024
9:05 a.m.

No. 368780
Branch Circuit Court
Family Division
LC No. 14-005211-NA

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

BOONSTRA, J.

Respondent-father (respondent) appeals by right the trial court's order terminating his parental rights to LK, his minor child, under MCL 712A.19b(3)(a)(*ii*), (3)(g), and (3)(j).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2023, the Department of Health and Human Services (DHHS) petitioned the trial court to take jurisdiction over LK and order the removal of the child from respondent-mother's home. Relevant to this appeal, the petition alleged that respondent was LK's putative father and that his previous Children's Protective Services' (CPS) involvement included a substantiated 2016 investigation for physical abuse, physical neglect, and improper supervision and a substantiated 2019 investigation for sexual abuse of one of his children. The petition further alleged that respondent was convicted of the sexual assault of one of his other children in 2019.

Respondent was not present at the preliminary hearing, but he was represented by counsel; DHHS noted on the record that it had contacted respondent and made him aware of the hearing. The trial court authorized the petition and ordered that LK be removed and placed in foster care.

---

[1] The minor child's mother was also a respondent in the proceedings below; her parental rights were terminated by a separate order of the trial court, and she is not a party to this appeal.

It also ordered that respondent submit to a paternity test and directed DHHS to make further efforts to locate respondent.

In February 2023, the trial court entered an order finding probable cause to believe that respondent was the putative or legal father of LK. Respondent did not appear for the adjudication trial; his counsel stated that efforts to locate him had been unsuccessful. The trial court entered an order of adjudication taking jurisdiction over LK. Respondent did not appear for subsequent dispositional review hearings.

In May 2023, DHHS filed a petition seeking termination of respondent's parental rights. The petition noted that respondent had not appeared for any hearing during the proceedings and had not had contact with DHHS throughout the case; the petition further alleged that respondent was absconding from probation at the time.

A termination hearing was held on July 21, 2023. Respondent's counsel informed the trial court that respondent had recently been incarcerated, and requested an adjournment to establish paternity. The trial court granted an adjournment with respect to respondent.

Respondent appeared via videoconferencing software at a status conference and paternity hearing on September 21, 2023. At the time, respondent was incarcerated in the Branch County Jail. The trial court noted that it had received the results of respondent's DNA testing and concluded that respondent was LK's biological father. Respondent did not object to that finding. Respondent appeared at a dispositional review hearing in November 2023. The trial court granted respondent parenting time at the discretion of DHHS.

The termination hearing resumed in November 2023. Respondent's probation agent testified that, as a condition of respondent's probation, he was prohibited from having any contact with a minor under the age of 17, including his own children. The agent testified that she accordingly advised respondent not to have contact with LK or his mother; however, respondent could have requested that his probation order be altered to allow contact with LK. Respondent had received no services while incarcerated and had not had any visitation with LK; further, respondent had not provided any material support to LK. Respondent testified that he discovered that he was LK's biological father at the beginning of August 2023 when he received the results of the court-ordered paternity testing; however, he admitted that he was present when LK was born and suspected that he was LK's biological father before receiving the test results. He testified that he had provided some material support to LK's mother during her pregnancy.

The trial court determined that the statutory grounds for termination found in MCL 712A.19b(3)(a)(*ii*), (3)(g), and (3)(j) had been proven by clear and convincing evidence, stating in relevant part:

> Under subsection 712(a)19(b) subsection 3(a)(2), that the child's parent has deserted the child for 91 days and has not sought custody of the child during the period, we heard a great deal of testimony about [respondent].
>
> I mean it's uncontroverted that he has not established custody of this child. Whether he believed that he was not the father or whatever—but not only has he not established custody, he's not had any contact with this child. He has not had

-2-

any contact with this child whatsoever. He did testify that he did take some things—little things, as he characterized them, baby bottles, bottles, to give to mother, he never actually gave them to mother. He took them to an address and he believed that she did receive those items.

Short of that, I mean, he really has not provided anything, and he's certainly not sought custody. This child is a year and a half, 17 months old. So, at no point in time has he actually sought custody. You know, questions were asked about whether he could do that, and whether he could have filed a motion to have contact with the child.

I'm assuming since he's indigent that he did have an attorney that represented him on the criminal case and certainly could have filed a motion with the Court and asked that he had contact with this child. And similarly, he could have attempted to pursue some sort of custody. So, the Court is clearly convinced he's not sought custody or provided for the child. So, I do find that that has been established.

The trial court found that termination of respondent's parental rights was in LK's best interests. It entered an order terminating respondent's parental rights as described. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's determination that statutory grounds for termination have been proven. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011); MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

We review de novo issues of statutory interpretation. *City of Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding that termination of his parental rights to the child was proper under MCL 712A.19b(3)(a)(*ii*). We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *VanDalen*, 293 Mich App at 139. In this case, the trial court terminated respondent's rights to LK under MCL 712A.19b(3)(a)(*ii*), (3)(g), and (3)(j). On appeal, respondent only challenges the trial court's determination that termination of his parental rights was proper under MCL 712A.19b(3)(a)(*ii*). Because only one statutory ground for termination need be proven, *VanDalen*, 293 Mich App at 139, we could decline to address this challenge as moot. See *Ducket v Solky*, 341 Mich App 706, 731-732; 991 NW2d 852 (2022) ("An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing

-3-

controversy"). Nonetheless, because this issue may have some public significance and may be likely to recur, we will address it. See *id.* at 732 (citation omitted).

Termination of parental rights is proper under MCL 712A.19b(3)(a)(*ii*) when a parent has "deserted the child for 91 or more days and has not sought custody of the child during that period." In child protective proceedings, the term "parent" is defined by MCR 3.903(A)(18). See *In re Long*, 326 Mich App 455, 463; 927 NW2d 724 (2018). MCR 3.903(A)(18) defines "parent" as "the mother, the father as defined in MCR 3.903(A)(7), or both, of the minor." MCR 3.903(A)(7) defines "father" as follows:

> (a) A man married to the mother at any time from a minor's conception to the minor's birth, unless a court has determined, after notice and a hearing, that the minor was conceived or born during the marriage, but is not the issue of the marriage;

> (b) A man who legally adopts the minor;

> (c) A man who by order of filiation or by judgment of paternity is judicially determined to be the father of the minor;

> (d) A man judicially determined to have parental rights; or

> (e) A man whose paternity is established by the completion and filing of an acknowledgment of parentage in accordance with the provisions of the Acknowledgment of Parentage Act, MCL 722.1001 et seq., or a previously applicable procedure. For an acknowledgment under the Acknowledgment of Parentage Act, the man and mother must each sign the acknowledgment of parentage before a notary public appointed in this state. The acknowledgment shall be filed at either the time of birth or another time during the child's lifetime with the state registrar.

On appeal, respondent argues that the trial court erred by finding that respondent had abandoned LK for at least 91 days. Specifically, respondent argues that the statutory time period only began on September 21, 2023, when the trial court judicially determined that he was LK's biological father. We disagree.

The plain language of MCL 712A.19b(3)(a)(*ii*) does not require that the requisite 91-day period of abandonment occur after a judicial determination of paternity has been made. See *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Further, in the context of determining whether the statutory ground found in MCL 712A.19b(3)(g) has been proven, this Court has stated that the actions of a putative father "occurring before he perfects paternity may be considered for purposes of terminating parental rights." *In re LE*, 278 Mich App 1, 24; 747 NW2d 882 (2008), overruled in part on other grounds *In re Sanders*, 495 Mich 394, 422 (2014). This Court in *In re LE* cited with approval an earlier unpublished decision holding that limiting consideration of a father's conduct to only the time after his paternity is legally established "would contravene the fundamental purpose of child protective proceedings by excluding from consideration a parent's conduct, no matter how neglectful or egregious, until paternity was

established." *Id.* at 23 (citation omitted). This Court also noted that, despite being ordered by the trial court to establish paternity in 2005, the respondent in *In re LE* took no steps to establish paternity until 2006, nor did he make any effort to support or visit the child. *Id.* at 24.

We believe that the reasoning of *In re LE* applies equally to a termination under MCL 712A.19b(3)(a)(*ii*). MCL 712A.19b(3)(g) also refers to the actions of the child's "parent" in failing to provide proper care and custody. See *The Cadle Co v Kentwood*, 285 Mich App 240, 249; 776 NW2d 145 (2009) (noting that identical language in various provisions of the same act should be construed identically). Moreover, respondent was listed as the child's putative father from the beginning of the case. On January 3, 2023, the trial court ordered respondent to submit to DNA testing to establish paternity of the child, but respondent did not do so until after he was arrested and incarcerated in July 2023. After submitting to DNA testing, respondent made no further efforts to visit, support, or plan for LK's care. Respondent testified that he was present at the hospital on the day LK was born, and that he suspected that he was LK's father before taking the DNA test; yet he made no effort to establish paternity, visit, or support LK during, at least, the first nine months of these proceedings.

Under these circumstances, we hold that the trial court did not err by considering respondent's conduct after being ordered to determine paternity, but before a judicial determination of paternity was made, in determining whether 91 days had elapsed as required by MCL 712A.19b(3)(a)(*ii*). *VanDalen*, 293 Mich App at 139. Although respondent makes no argument concerning the remaining elements of desertion under the statute, we note that the record reflects that, at the time the termination petition was filed, respondent had deserted LK. The first hearing that respondent attended was on September 21, 2023. At the time of the termination hearing, respondent had still had no contact with LK and had not even attempted to alter the conditions of his probation in order to do so. Accordingly, the trial court did not err by finding that a statutory ground for termination of respondent's parental rights existed under MCL 712A.19b(3)(a)(*ii*). *VanDalen*, 293 Mich App at 139.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent also argues that the lawyer-guardians ad litem (LGALs)[2] assigned to LK in this case provided ineffective assistance of counsel. We hold that respondent lacks standing to assert this claim.

Under MCL 712A.17c(7), a child has a right to appointed counsel in child protective proceedings. This Court has held that "a child's attorney has the same duties that any other client's attorney would fulfill when necessary." *In re AMB*, 248 Mich App 144, 224; 640 NW2d 262 (2001). Generally, constitutional protections are personal and "cannot be asserted vicariously . . . ." *People v Smith*, 420 Mich 1, 17; 360 NW2d 841 (1984), citing *Simmons v United States*, 390 US 377, 389; 88 S Ct 967; 19 LEd2d 1247 (1968). Accordingly, "this Court has held

---

[2] JK's initial LGAL was replaced after respondent alerted the trial court to a potential conflict of interest.

that a respondent in a child protective proceeding lacks standing to challenge the effectiveness of the child's attorney." *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009).

Respondent acknowledges that this Court is bound by *In re HRC*. See MCR 7.215(J)(1). Nonetheless, he requests that this Court overturn its previous opinion. We decline that invitation because, on appeal, respondent fails to put forth any compelling reason to do so. Respondent argues that this Court's previous holdings preclude the raising of any ineffective-assistance-of-counsel claim on behalf of a child, because no one can raise the claim for the child and the child cannot raise it for himself. However, there are statutory requirements with which an LGAL must comply. See MCL 712A.17d. These statutory requirements serve as a safety valve to ensure that LGALs effectively represent the children for whom they are appointed. Further, there is nothing preventing parties from raising concerns with the trial court over an LGAL's conduct or compliance with statutory requirements; a party is simply prohibited from asserting on behalf of the child that the LGAL provided constitutionally-defective representation that resulted in prejudice to the child. Accordingly, we decline to declare a conflict with *In re HRC* or otherwise depart from established precedent.

Affirmed.


/s/ Mark T. Boonstra
/s/ Christopher P. Yates
/s/ Mark J. Cavanagh